**UNITED STATES of America, Appellee,**

v.

**Yves LEANDRE, a/k/a Jean–Claude Jean Baptiste, Appellant.**

No. 96–3166.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 23, 1997.

Decided Jan. 13, 1998.

Carmen D. Hernandez, Assistant Federal Public Defender, argued the cause for appellant, with whom A.J. Kramer, Federal Public Defender, Washington, DC, was on the briefs. Amy Seidman, Assistant Federal Public Defender, entered an appearance.

Joseline A. Peña, Assistant U.S. Attorney, argued the cause for appellee, with whom Mary Lou Leary, U.S. Attorney, John R. Fisher, Mary–Patrice Brown, and G. Bradley Weinsheimer, Assistant U.S. Attorneys, Washington, DC, were on the brief.

Before: WILLIAMS, ROGERS and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

On appeal from his sentence for distribution, and aiding and abetting the distribution, of cocaine base, appellant Yves Leandre principally contends that the district court erred by failing to reduce his sentence based upon his diminished mental capacity. Although the United States Sentencing Guidelines do not include an explicit reduction for "diminished mental capacity," the policy statement contained in section 5K2.13 states that a court may reduce a sentence "to reflect the extent to which reduced mental capacity contributed to the commission of the offense." U.S. SENTENCING GUIDELINES MANUAL § 5K2.13, p.s. (1997) [hereinafter "U.S.S.G." or "Guidelines"]. The Sentencing Commission has thus acknowledged that a defendant's "diminished capacity" is a mitigating circumstance not adequately taken into account in formulating the Guidelines that would normally warrant a downward departure. See 18 U.S.C. § 3553(b) (1988); U.S.S.G. § 5K2.0, p.s.; Koon v. United States, 518 U.S. 81, ——, 116 S.Ct. 2035, 2044, 135 L.Ed.2d 392 (adopting the framework of United States v. Rivera, 994 F.2d 942, 949 (1st Cir.1993)). The threshold question, however, is precisely what "contribution" is required of a defendant's "reduced mental capacity" before the court may depart from the Guidelines, and that is not an easy question to answer. The remaining questions are whether the district court misapplied the Guidelines or considered improper factors. We conclude that the district court did not misconceive the necessary causal relationship between a defendant's diminished capacity and his criminal conduct nor otherwise err in denying Leandre's request for a departure under section 5K2.13. Similarly unpersuasive are Leandre's challenges to the district court's failure to depart downward based upon his family circumstances under section 5H1.6 and his status as a deportable alien. Accordingly, we affirm.

I.

Yves Leandre pleaded guilty to the unlawful distribution and aiding and abetting the distribution of five grams or more of cocaine base.[1] According to the presentence report, Leandre was accountable for a total of 123.21 grams of crack cocaine; he had participated in three separate sales of a total of 115.21 grams of drugs to undercover officers and nearly 8 grams of cocaine base and related drug paraphernalia were found in his apartment. This placed him at a base offense level of 32 under the Guidelines. See U.S.S.G. § 2D1.1(c)(4). The district court, without objection by the government, reduced Leandre's offense level to 29 because of his acceptance of responsibility for his criminal conduct. See U.S.S.G. § 3E1.1(a), (b)(2). Leandre had also previously been convicted of two drug-related misdemeanors and a felony, for which he fell into criminal history category IV. See U.S.S.G. §§ 4A1.1, 4A1.2, 5A. The combination of these factors established a sentencing range of 121–151 months imprisonment. See U.S.S.G. § 5A. Prior to sentencing, Leandre sought to have his sentence reduced due to a variety of factors.[2] Of relevance here, he sought a downward departure from the Guidelines' range because of his diminished mental capacity, noting in his memorandum in aid of sentencing his history of mental problems. He also requested departures based upon his responsibility to care for his two young children and the likelihood of his deportation as a result of his conviction. The district court denied each request, but imposed the shortest term of incarceration within the applicable Guideline range: 121 months imprisonment followed by four years of supervised release.

---

1. See 18 U.S.C. § 2(A) (1988); 21 U.S.C. § 841(a), (b)(1)(B)(iii) (1988). "Cocaine base" is more commonly known as "crack cocaine." See United States v. Edwards, 98 F.3d 1364, 1369 (D.C.Cir.1996), cert. denied, —— U.S. ——, 117 S.Ct. 1437, 137 L.Ed.2d 544 (1997).

2. In addition to the departures addressed in the instant appeal, Leandre asserted that he was entitled to a downward adjustment under U.S.S.G. § 3B1.2 for his minor role in the drug offenses; under § 4A1.3 because the criminal history category overrepresents the seriousness of his prior crimes; under § 5K2.12 for coercion and duress; and, more generally, based on his "efforts to overcome [an] adverse environment," as well as a combination of all of these factors. Leandre does not challenge the denial of these departures on appeal.

 The scope of this court's review of a district court's decision not to depart from the Guidelines is limited but not insignificant. Because in deciding whether to depart "the district court must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing," these courts have an "institutional advantage over appellate courts in making these sorts of determinations." *Koon v. United States,* 518 U.S. 81, ——–——, 116 S.Ct. 2035, 2046–47, 135 L.Ed.2d 392 (1996) (interpreting 18 U.S.C. § 3742 (1988)). Hence an appellate court's review of the denial of a downward departure is confined to determining whether there has been a mistake of law or an incorrect application of the Guidelines.[3] *See United States v. Johnson,* 49 F.3d 766, 768 (D.C.Cir.1995). As this court explained in *United States v. Sammoury,* 74 F.3d 1341, 1344 (D.C.Cir.1996), "[i]f a district judge sticks to the [G]uideline range because [the judge] mistakenly believes he [or she] lacks authority to do otherwise, [the judge's] sentencing decision is reviewable on appeal." Factual findings relied upon by the district court in determining that a departure is not warranted are reviewed for clear error. *See* 18 U.S.C. § 3742(d); *Sammoury,* 74 F.3d at 1344. "Even if a judge correctly understands his [or her] discretionary authority to depart downward when a particular mitigating circumstance exists, the judge may make a clearly erroneous factual finding that the circumstances do not exist." *Sammoury,* 74 F.3d at 1344. But, if the district court correctly understood the Guidelines and the evidence, was aware of its authority to depart, and decided not to depart, there is no basis on which this court can reverse the exercise of discretion because no error has occurred. *Id.* at 1343.

**3.** We have no occasion to decide whether after *Koon* our review of a denial of a departure is for abuse of discretion, *see Koon,* 518 U.S. at ——–——, 116 S.Ct. at 2047–58, for even were that standard to apply it would not affect our disposition. *See generally, Kickapoo Tribe of Indians v. Babbitt,* 43 F.3d 1491, 1497 (D.C.Cir.1995) (describing nature of trial court discretion).

**4.** Section 5K2.13 provides:

## II.

The Guidelines do not expressly provide for a departure from the applicable sentencing range based on a defendant's diminished mental capacity. Congress, however, has allowed district courts to depart from the Guidelines to reflect "mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the [G]uidelines." 18 U.S.C. § 3553(b). In Chapter 5, Part K (Departures) of the Guidelines, the Sentencing Commission recognized certain factors that it had not taken fully into account, and listed in policy statements several encouraged or discouraged grounds for departures. *See* U.S.S.G. § 5K2.0, p.s.; *Koon,* at ——, 116 S.Ct. at 2045. The Commission identified a defendant's reduced mental capacity as one circumstance in which a departure would be encouraged. *See* U.S.S.G. § 5K2.13; *Koon,* at ——, 116 S.Ct. at 2044 (adopting the framework of *United States v. Rivera,* 994 F.2d 942, 949 (1st Cir. 1993)). Such a disability, in the Commission's view, "would normally warrant a downward departure." *Rivera,* 994 F.2d at 947 (Breyer, C.J.) (citing U.S.S.G. § 5K2.13, p.s.). Thus, under section 5K2.13 of the Guidelines, the district court may depart downward if a defendant: (1) has committed a non-violent offense, (2) while suffering from "significantly reduced mental capacity", (3) that was not caused by the voluntary use of other intoxicants, (4) where the defendant's mental incapacity "contributed to the commission of the offense," (5) so long as the defendant's criminal record does not indicate a need for imprisonment to protect public safety.[4] U.S.S.G. § 5K2.13, p.s.; *see also United States v. Cantu,* 12 F.3d 1506, 1511 (9th Cir.1993).

If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.
U.S.S.G. § 5K2.13, p.s.

Leandre contends that the district court misconstrued the scope of its discretion to depart under section 5K2.13 by applying an overly-stringent standard for the fourth requirement. He maintains that the phrase "contributed to the commission of the offense" encompasses a far broader meaning than the district court appreciated when it focused on the absence of any "direct connection between [Leandre's] reduced mental capacity and the offense which was committed." Noting that the Sentencing Commission's policy statement only requires that a defendant's mental incapacity contribute to the commission of a crime, Leandre contends that the district court improperly applied a "but-for" test in determining his eligibility for the departure. By applying such a heightened standard, Leandre maintains, the district court evaluated the grounds for the departure as if Leandre were asserting an insanity defense under 18 U.S.C. § 17 (1988). In addition, Leandre contends, the district court failed to review the availability of the departure with a "view to lenity, as section 5K2.13 implicitly recommends" consistent with *United States v. Chatman*, 986 F.2d 1446, 1454 (D.C.Cir.1993).

The evidence before the district court at sentencing included a psychological report classifying Leandre as mildly mentally retarded, with an IQ of 66. The report, provided by Leandre, noted that he suffered from bouts of depression since early adolescence and has exhibited symptoms of "depressive psychosis." Further, the report revealed, while incarcerated for a previous conviction, Leandre had attempted suicide after experiencing hallucinations and hearing demeaning voices that convinced him that he was a failure. At times, the report continued, these voices also expressed paranoid delusions. After his release from prison, the voices continued and, according to the psychologist, may have even intensified. Nevertheless, Leandre received no psychiatric treatment or medication after his release.

Observing that throughout his life Leandre has repeatedly turned to drug use to cover over his depression and psychoses, the psychologist concluded that Leandre's addiction may have aggravated his conditions. Based upon this history, the psychologist further concluded that Leandre's decision to sell drugs was "partly" influenced by his psychiatric difficulties. The psychologist opined that Leandre's "ability to refrain from accepting the offer proposed to him was diminished by the recurrence of a serious depression with suicidal implications and the intensification of a psychotic underlayer in his psyche."

The district court found, notwithstanding the psychologist's causal conclusion, that Leandre had failed to establish "the collection of factors" necessary for a downward departure under section 5K2.13. Of concern to Leandre on appeal, the court stated that "there must be a direct connection between the reduced mental capacity and the offense which was committed." Relying on *Sammoury*, 74 F.3d at 1345, the court emphasized that there must be a "causal connection" between the two, and resolved that Leandre had "not presented any persuasive demonstration of a real nexus or connection between this state of mind and the conduct constituting the crimes in this case." Largely adopting the position taken by the government in opposing Leandre's motion for departure,[5] the court observed that it did not take a great deal of intellectual sophistication either to sell drugs or to understand that doing so was unlawful, that Leandre had repeatedly chosen to resume his own drug use, and that his prior convictions put him on notice of the consequence of his actions. The district court was of the opinion that Leandre did not suffer from a "significantly reduced mental capacity," as required by section 5K2.13 because his condition did not impede his ability to reason.

The meaning properly ascribed to the term "reduced mental capacity" and its precise

5. The government had argued first, that given the uncomplicated nature of the crimes, Leandre, who had previously worked as a plumber and a cook, was more than capable of understanding what was required of him and was sufficiently savvy to participate in negotiations for the amount of drugs he was to supply, and second, that while Leandre's intellectual limitations may have made him more susceptible to the lure of the drug trade, he had failed to show that his mental infirmities contributed to the commission of the offense in any "real sense."

application in addressing a departure request involve areas that are not without difficulty. Little substantive guidance has been provided by the Sentencing Commission, either in the language of the Guidelines themselves or in the commentary or application notes. *See* U.S.S.G. § 5K2.13. Is the court to award a departure upon a showing of a nontrivial probability that the defendant's diminished capacity increased the likelihood of the crime? Put otherwise, is the court to depart when presented with evidence that a defendant suffers from diminished mental capacity that possibly contributed, but was not essential, to the commission of the crime? Neither the Sentencing Commission nor the courts have given a clear answer. But similar concerns were traditionally considered by sentencing judges prior to the promulgation of the Guidelines in mitigation of the punishment of legally sane defendants suffering from various mental infirmities. *See generally* Norval Morris, *Madness and the Criminal Law* 129–134, 142–44, 146–152 (1982); Henry Weihofen, *Mental Disorder as a Criminal Defense* 209–10 (1954). This can be seen most clearly in the context of capital punishment where mental limitations and illnesses must be considered as mitigating factors when offered by the defendant. *See, e.g., Penry v. Lynaugh,* 492 U.S. 302, 317–29, 109 S.Ct. 2934, 2946–52, 106 L.Ed.2d 256 (1989); *Eddings v. Oklahoma,* 455 U.S. 104, 113–16, 102 S.Ct. 869, 876–78, 71 L.Ed.2d 1 (1982). This court explained in *Chatman,* moreover, that leniency is appropriate because "two of the primary rationales for punishing an individual by incarceration—desert and deterrence—lose some of their relevance when applied to those with reduced mental capacity." *Chatman,* 986 F.2d at 1452 (quot-

ing *United States v. Poff,* 926 F.2d 588, 595 (7th Cir.1991) (Easterbrook, J., dissenting)); *see also* Morris, *supra,* at 151–52.

The mitigation of sentences to reflect a defendant's reduced mental capacity is distinct from the conventional criminal law defense of "diminished capacity." [6] In its most commonly accepted formulation, "diminished capacity" refers to situations where a defendant's mental abnormality, although insufficient to exonerate the defendant on grounds of insanity, negates the element of *mens rea* required for conviction for the charged offense (i.e. an intent to kill, premeditation, etc.). *See United States v. Brawner,* 471 F.2d 969, 998–1002 (D.C.Cir.1972); MODEL PENAL CODE § 4.02(1) cmt. 2 (1962). Consideration of a defendant's mental condition in sentencing, on the other hand, is appropriately viewed as an extension of the concept of "diminished (or partial) responsibility." *See* Stephen J. Morse, *Undiminished Confusion in Diminished Capacity,* 75 J.Crim. L. & Criminology 1, 21 (1984); Andrew Brown, *Limits on the Use of Diminished Capacity as a Basis for Departure,* 7 Fed. Sentencing Rep. 193, 194 (1995). A defendant may not be considered fully responsible for a crime due to his mental condition: as one commentator has suggested, "[e]ven if the technical elements of an offense are satisfied, the defendant is less culpable and should be convicted of a lesser crime, or, at least, should be punished less severely." Morse, *supra,* at 20. While courts have generally refused to integrate the defense of partial responsibility into substantive criminal law, it has long been applied, at least implicitly, by judges during sentencing.[7] *Id.* at 27–28.

6. The Sentencing Commission has included several conventional common law affirmative defenses as encouraged departures from the guidelines, such as coercion and duress, *see* U.S.S.G. § 5K2.12, and victim provocation, *see* U.S.S.G. § 5K2.10. These claims may not be sufficient to provide a full affirmative defense for acquittal, but they may be "morally salient under the guidelines." Robert Weisberg, *Guideline Sentencing, Traditional Defenses, and the Evolution of Substantive Criminal Law Doctrine,* 7 Fed. Sentencing Rep. 168, 168 (1995); *see also* U.S.S.G. § 5K2.12 (acknowledging that judge may depart for coercion or duress "not amounting to a complete defense.").

7. *See* Joshua Dressler, *Understanding Criminal Law* § 26.03 at 325 (1987) ("The partial-responsibility variant of the diminished capacity defense is not a defense to most crimes in the United States. In some states it is a defense to murder."). For a general discussion of the confusion between "diminished capacity" and "diminished responsibility," see Morse, *supra,* and Peter Aranella, *The Diminished Capacity and Diminished Responsibility Defenses: Two Children of a Doomed Marriage,* 77 Colum. L.Rev. 827 (1977). *Compare also* Insanity Defense Reform Act of 1984, 18 U.S.C. § 17 (1988) (abolishing the affirmative defense of diminished responsibility in federal prosecutions), *with United States v. Chil-*

Against this background it follows that the departure for "significantly reduced mental capacity" under section 5K2.13 does not require a showing of insanity. *Cf. United States v. Spedalieri*, 910 F.2d 707, 711 (10th Cir.1990). Neither does it require a defendant's diminished capacity to have prevented formation of the legally defined mental state associated with an offense. Nor must a defendant demonstrate that he or she is severely mentally retarded. The departure under section 5K2.13 applies to all crimes equally and may be considered by the sentencing judge even if the fact-finder has rejected a defense of insanity or diminished capacity. *See Spedalieri*, 910 F.2d at 711; *United States v. Cheape*, 889 F.2d 477, 480–81 (3d Cir.1989). As this court emphasized in vacating and remanding for resentencing in *Chatman*, the ultimate goal of section 5K2.13 "is to treat with lenity those individuals whose reduced mental capacity contributed to the offense." *Chatman*, 986 F.2d at 1452 (internal quotation marks omitted).

Thus, as Leandre maintains, a defendant's reduced mental capacity need not be the necessary cause of the commission of his crime in order for him to be eligible for a downward departure under section 5K2.13. In other words, a defendant is not required to prove that he would not have committed the offense but for the existence of his mental infirmity. All of the circuits to have addressed the issue of causation have rejected a "but-for" test. *See, e.g., United States v. Cantu*, 12 F.3d 1506, 1515 (9th Cir.1993); *United States v. Soliman*, 954 F.2d 1012, 1014 (5th Cir.1992); *United States v. Glick*, 946 F.2d 335, 339 (4th Cir.1991); *United States v. Lauzon*, 938 F.2d 326, 331 (1st Cir.1991); *United States v. Ruklick*, 919 F.2d 95, 97 (8th Cir.1990). *See also United States v. Speight*, 726 F.Supp. 861, 868 (D.D.C. 1989). The plain language of section 5K2.13, permitting departures, "to reflect the extent to which reduced mental capacity contributed to the commission of the offense," makes clear that the defendant's diminished capacity need be only a contributing factor.

*dress*, 58 F.3d 693, 728–30 (D.C.Cir.1995) (holding that diminished capacity may still be used to

U.S.S.G. § 5K2.13; *see also Cantu*, 12 F.3d at 1515; *Ruklick*, 919 F.2d at 97–98. Yet, it is equally clear that a bare showing of reduced mental capacity, without more, is insufficient to authorize a court to depart. *See United States v. Frazier*, 979 F.2d 1227, 1230 (7th Cir.1992). The belief that a defendant with diminished capacity is less culpable for a crime, and the conclusion that the rationales for punishment are reduced for such a defendant, may in theory suggest that a court should consider mitigating a sentence regardless of the mental deficiency's contribution to the crime. Leandre appeared to advance this view at oral argument by positing that section 5K2.13 should be understood as encouraging a downward departure in the case of a defendant possessing a diminished mental capacity as compared with an identically situated, but psychologically normal, defendant convicted of the same crime. But as Leandre readily admitted, the language of the policy statement rejects such a broad basis for departure by explicitly requiring that the defendant's reduced capacity "contribute to" the offense. U.S.S.G. § 5K2.13, p.s. Absent some causal link, the sentencing judge would misapply the Guidelines by granting a departure. *See id.*; *Sammoury*, 74 F.3d at 1345.

Leandre's comparison of two hypothetical defendants, however, suggests a subtler interpretation of the requirements for a departure under section 5K2.13. Under this interpretation, once the district court finds that a defendant was suffering from a reduced mental capacity at the time of the criminal conduct, the court has discretion to depart so long as the departure is roughly commensurate with the extent to which the diminished capacity affected the crime. "Courts need not measure contribution against a minimum threshold before allowing a departure[;] . . . [t]he proper focus is on matching the magnitude of the departure with the magnitude of the contribution." *Brown, supra,* at 195. Presumably the magnitude would be zero if the district court found the contribution to be negligible, thus permitting no departure, but,

negate mens rea).

in general, the court would be given a freer hand in departing from the Guidelines.

Other circuits examining the grounds for departures under section 5K2.13, have required an initial finding of causation before the district court can attempt to scale the punishment to the effects of the mental abnormality. For example, in *Frazier* the Seventh Circuit rejected the approach adopted by the sentencing judge who had assumed that there was a connection between the defendant's mental disorder and the crime committed, requiring instead specific findings of causation before allowing a departure. *See Frazier*, 979 F.2d at 1230. Similarly in *Cantu*, the Ninth Circuit explained that causation actually comes into play twice in deciding whether to depart based on a defendant's diminished mental capacity: first, in deciding whether a defendant is eligible for a downward departure, and subsequently in determining the extent of any available departure. *See Cantu*, 12 F.3d at 1515.

In practice, this distinction may result more in a difference in emphasis than in any difference in substance. Whether a mentally infirm defendant whose reduced mental capacity did not contribute to his crime is *per se* ineligible for a departure, or is legally eligible but the extent of the departure must be nil, the result is the same. Under either view, the district court may not mitigate a sentence in the absence of some causal link. However, once some nexus is shown, *to any degree*, the district court may depart downwardly to reflect the extent of that contribution. *See Cantu*, 12 F.3d at 1515. While the defendant has the burden of showing "some" connection between his diminished capacity and his criminal conduct, *see Sammoury*, 74 F.3d at 1345; *Johnson*, 49 F.3d at 768, that burden may not be particularly heavy in view of the obligation to treat with lenity defendants who suffer from "significantly reduced mental capacity." *See Chatman*, 986 F.2d at 1454; *Cantu*, 12 F.3d at 1511 ("The goal of the guideline is lenity

toward defendants whose ability to make reasoned decisions is impaired.").

■■■ Of course neither formulation clarifies what constitutes a "contribution" to an offense. Leandre's interpretation seems to assume that any reduction in mental capacity will "contribute" to an offense in the sense that there will always be a nontrivial probability that the defendant's mental capacity increased the likelihood of the crime. This contention is not directed at the relevant legal standard for a departure under section 5K2.13, however, but at the legitimacy of ever finding that there exists no causal connection between a defendant's reduced mental capacity and his crime. Such an assumption would effectively negate the requirement of causation entirely, and therefore, given the language of section 5K2.13, we cannot credit it. *Cf. Frazier*, 979 F.2d at 1230. Whether a defendant's reduced mental capacity "contributed to the commission of a crime" is an individualized factual determination to be made by a sentencing court in light of the entire record before it. Unlike the usually uniform sentencing structure mandated by the Guidelines, the court is called upon to consider the defendant's individual characteristics in exercising its discretion to depart. *See Koon*, at ———–———, 116 S.Ct. at 2044–45.

■■■ So understood, we conclude that the district court did not misapprehend its authority to depart from the Guidelines under section 5K2.13 by applying an overly stringent "but-for" test. The district court never considered the degree of causation necessary for a downward departure because it found that Leandre's reduced mental capacity did not contribute to his crime in any way. Leandre's reliance on the district court's initial statement at sentencing that "there must be a direct connection between the reduced mental capacity and the offense which was committed" as proof of an inappropriate standard[8] is misplaced. The statement

---

**8.** Leandre also contends that the district court's conclusion that his mental deficiency did not affect his perception of "the relationship between cause and effect, crime and consequence" indicates that the court actually applied the test for an insanity defense. This statement, howev-

er, addresses the separate issue of whether the defendant possessed a "significantly reduced mental capacity," not the extent to which any reduced capacity contributed to the crime. Furthermore, the phrase "cause and effect" cannot be equated with a determination that Leandre

merely echoed the language of *Johnson,* where this court explained that a finding of a "direct connection" does not require the defendant's reduced mental capacity to be the sole cause of his conduct. *See Johnson,* 49 F.3d at 768. Moreover, the district court explained that it was relying on *Sammoury* in requiring "a causal connection between the reduced mental capacity and the offense.". *See Sammoury,* 74 F.3d at 1345. After reviewing the presentence report, the psychological evaluation, and Leandre's prior criminal record, the district court concluded that there was no "clear demonstration of a nexus between the so-called diminished capacity and the crimes before the Court today." The record thus shows that while the district court might well have reached a different conclusion about causation in light of the psychologist's report, the court understood that section 5K2.13 requires no more than that the defendant's reduced capacity be a contributing factor, to some degree, to his offense.

At the same time, when the district court conducts the factual inquiry required for an encouraged departure under section 5K2.13, *Chatman* makes clear that the court should proceed "with a view to lenity." *Chatman,* 986 F.2d at 1454. In that case the court vacated and remanded for resentencing in the absence of record evidence that the district court undertook its factual inquiry "with a view to lenity, as section 5K2.13 implicitly requires." *Id.* The district court here did not refer to lenity in so many words, nor to the purposes of punishment discussed in *Chatman.* But, the court was aware of the *Chatman* analysis as it was presented in Leandre's memorandum in aid of sentencing. Significantly, for this purpose, the court imposed the sentence at the lowest end of the Guideline range.

■ The only remaining question is whether the district court's causal finding was clearly erroneous. In finding that Leandre's reduced mental capacity had not contributed to the offense, the district court

considered the unsophisticated nature of the crime, the effect of Leandre's voluntary drug use on his conduct, and his criminal history. Although reliance on some of these factors in isolation might be problematic, viewed together, they support the district court's finding.

■ First, the nature of the offense. The district court properly emphasized the fact that "it really doesn't require a great amount of intellectual sophistication to sell drugs or to understand that it is unlawful." The mental acumen required for the planning, preparation, and execution of a crime is a logical starting place for examining the effects of a defendant's reduced capacity. While the particular mens rea required for conviction of the offense is not relevant to this assessment, the general level of intellectual sophistication associated with a crime is. Of course, the "intellectual sophistication of the crime" taken in isolation cannot be the end of the inquiry. Without suggesting that the more complicated the criminal conduct, the more likely the mental incapacity contributed to it, it is nevertheless clear that even the simplest, most mindless crime can be caused in part by a defendant's mental incapacity. A defendant, for example, could be driven by a compulsive mental disorder to commit a crime unthinkingly. Section 5K2.13, therefore, is not limited to particular classes of crime and may be considered for any offense, no matter how unsophisticated.

■ The level of intellectual sophistication required for a crime is only relevant when considered in relation to the type of mental abnormality suffered by the defendant. Here, the district court concluded that this factor belied any causal connection to the crime. The government's proffer of evidence in support of Leandre's plea showed that he was essentially a courier, bringing the drugs in response to instructions from a third person. There was evidence as well that Leandre participated in negotiations for the sale price of the drugs. Further, Leandre had been employed in the past, as both a plumber

did not know "right from wrong" as would be required for a showing of insanity. Rather it is an evaluation of the defendant's ability to reason in accordance with *United States v. Edwards,* 98

F.3d 1364, 1371 (D.C.Cir.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 1437, 137 L.Ed.2d 544 (1997), and represents the court's response to the conclusions of Leandre's psychologist.

and a cook, despite his low IQ, depression, and other mental afflictions. Although the district court might well have reached a different conclusion, *see, e.g., Speight,* 726 F.Supp. at 868 (ordering departure from sentence for the distribution of cocaine and possession of a firearm where the defendant was suffering from schizophrenia), especially in view of the psychologists' report, its contrary conclusion is supported by the evidence before it.

■ Second, voluntary drug use. The district court evaluated the effects of Leandre's drug use on his mental capacity and his conduct. Clearly, the relationship between a defendant's drug use and his conduct is relevant to an assessment of whether his reduced mental capacity was a cause of his offense. A departure under section 5K2.13 might remain available if a defendant's drug use contributed only in part to a crime, because his mental infirmity may have also played a role. Because a defendant's reduced mental capacity need not be the sole cause of the crime, both drug use and mental illness may contribute to the commission of an offense. *See Cantu,* 12 F.3d at 1514–15; *Speight,* 726 F.Supp. at 868. But if drug use was an independently sufficient cause of a defendant's behavior, a court could conclude that his reduced mental capacity had not contributed to the crime. Furthermore, a departure under section 5K2.13 is unavailable where the reduced mental capacity itself "result[ed] from voluntary use of drugs or other intoxicants." U.S.S.G. § 5K2.13. *See Chatman,* 986 F.2d at 1452.

In sentencing Leandre, the district court's evaluation of Leandre's drug use was confined to stating that "the drug use may indeed have had an effect on his behavior and his state of mind." The court did not indicate whether it had concluded that Leandre began to sell cocaine base in whole or in part because of his drug addiction. The psychologist's report, on the other hand, indicated that Leandre began selling drugs to others as a result of his efforts to buy them for his own use. The district court apparently ac-

cepted the psychologist's conclusion that Leandre's mental problems predated his drug use and were exacerbated by it. If the court had found that Leandre's reduced mental capacity was actually caused by his voluntary drug use, Leandre would have been ineligible to receive a departure under section 5K2.13. *See Chatman,* 986 F.2d at 1452. Instead, the court continued its inquiry into the nature and effect of Leandre's diminished capacity in light of his drug use. While it is doubtful that the court's finding of an absence of causation could be supported by Leandre's drug use alone, nevertheless, recognition of Leandre's drug use, as part of a broader range of relevant factors, was entirely appropriate.

■ Third, criminal history. In declining to grant a downward departure under section 5K2.13, the district court noted that Leandre had previously been convicted of attempted possession of PCP (phencyclidine), possession of cocaine, and armed robbery. This was a proper consideration for the purpose of determining whether Leandre suffered from a "significantly reduced mental capacity" under section 5K2.13.[9] But it is unclear how a defendant's past crimes would be relevant to determining whether his mental illness contributed to the criminal conduct for which he is to be sentenced. The government argued that Leandre had failed to show evidence that he was suffering from any psychosis at the time of the current offense. It is unclear which way this cuts. If a defendant has committed the same crime in the past or engaged in a particular pattern of behavior, and did not suffer from the same mental illness, then a sentencing court might reasonably conclude that the defendant's current claim of reduced mental capacity did not contribute to the offense. Yet such an occurrence would probably be rare, and, in any event, is not Leandre's case. In general, section 5K2.13 is an offense specific departure. The Guidelines contemplate other departures, and to the extent that section 5K2.13 is an encouraged departure, *see Koon,* at ——, 116 S.Ct. at 2045; *Rivera,* 994

---

9. Leandre's criminal history would also be relevant to determining whether his incarceration was necessary to protect public safety, as an

independent ground for denying him a departure under section 5K2.13. *See* U.S.S.G. § 5K2.13.

F.2d at 948, it follows that even if a defendant has committed crimes in the past, his punishment for the current criminal offense may still be mitigated due to his reduced mental capacity at the time of the current offense.

■ Given the uncertainty about how a district court is to determine whether a defendant's reduced mental capacity "contributed" to the commission of an offense, the district court cannot be faulted for exploring several alternative lines of analysis. Its consideration of the sophistication of Leandre's offense and the effects of his voluntary drug use were proper factors to be evaluated and support the court's ultimate conclusion that there was no causal nexus between Leandre's offense and his mental disabilities. Although the psychologist concluded that Leandre's decision to sell drugs was "influenced ... partly" by his "intellectual limitation and psychiatric illness," the district court was not bound to accept that conclusion. *Cf. Sammoury,* 74 F.3d at 1346. The government offered a contrary analysis that the court found persuasive. Based upon the record as a whole, the court considered the relevant evidence before it, including the psychologist's report and the appellant himself, and did not clearly err in finding that there was no contribution as would warrant a downward departure.

■ Leandre belatedly contends, however, that the district court misconceived the nature of Leandre's diminished capacity and the conditions that qualify as a "significantly reduced mental capacity" under section 5K2.13. In declining to depart under section 5K2.13, the court interpreted the departure as covering mental, psychological, and behavioral disorders that "diminish the defendant's ability to reason." The court doubted, however, that Leandre possessed a "mental deficiency that might not make apparent the relationship between cause and effect, crime and consequence." Leandre contends that the district court underestimated its authority to depart by focusing exclusively on Leandre's ability to reason, without considering any "volitional impairments" as suitable grounds for departure. He relies on *United States v. McBroom,* 124 F.3d 533, 544–49 (3d

Cir.1997), in which the Third Circuit held that a person may suffer from a "reduced mental capacity" if he or she "knows what he [or she] is doing and that it is wrong but cannot control his [or her] behavior to conform it to the law." This argument was never presented to the district court or even to this court until Leandre's reply brief, and we find no plain error. *See United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508 (1993); *United States v. Saro,* 24 F.3d 283, 286 (D.C.Cir. 1994); *United States v. Foster,* 988 F.2d 206, 209 (D.C.Cir.1993).

The district court's observation that "reduced mental capacity" refers to a defendant's ability to reason was taken directly from *United States v. Edwards,* 98 F.3d 1364, 1371 (D.C.Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1437, 137 L.Ed.2d 544 (1997). *See also Cantu,* 12 F.3d at 1512. No precedent exists in this circuit suggesting that a district court should consider "volitional impairments" under section 5K2.13, and *McBroom* was not decided until after Leandre was sentenced. *See McBroom,* 124 F.3d at 544–49. Given the absence of precedent and the "novelty of the issue," the district court's failure *sua sponte* to consider any "volitional" component of Leandre's mental infirmity was not plain error. *United States v. Blackwell,* 694 F.2d 1325, 1342 (D.C.Cir. 1982).

### III.

Leandre's other claims of sentencing error require only brief discussion.

■ His contention that the district court erred by failing to reduce his sentence due to his extraordinary family circumstances under section 5H1.6 of the Guidelines is, given the limited scope of review of a denial of a departure request, fully met by *United States v. Dyce,* 91 F.3d 1462 (D.C.Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 533, 136 L.Ed.2d 418 (1996). Leandre is a single father of two young children who might be placed in foster care if Leandre's brother refuses to take them into his home. Such evidence of a difficult family situation that will arise upon Leandre's incarceration is,

unfortunately, no more extraordinary than that deemed by the *Dyce* court not to be sufficiently extraordinary for a departure. At best Leandre's situation is within the same range of extraordinary circumstances as those of the defendant in *Dyce*. *See Dyce*, 91 F.3d at 1466–68. From the perspective of the defendants' children, the result may be harsh but it is not so extraordinary a circumstance confronting sentencing judges. If, as this court concluded in *Dyce*, the district court erred in taking into account the desirability of breast feeding of a newborn by the defendant, *see Dyce*, 91 F.3d at 1467, then the district court's decision not to depart because Leandre cared for his two children falls within the range of permissible determinations available in the exercise of reasoned discretion.

■ Finally, Leandre's contention that the district court erred by failing to reduce his sentence because of his status as an alien is meritless. A downward departure from the Guidelines "may be appropriate where the defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his sentence." *United States v. Smith*, 27 F.3d 649, 655 (D.C.Cir.1994). But Leandre, assisted by able counsel, requested at sentencing only that the district court consider the increased likelihood of his deportation. In denying the articulated request, the district court concluded that "no departure is appropriate because of [Leandre's] status which has been placed at risk by his own criminal behavior." At no point did Leandre suggest that he might suffer more serious punishment as a result of his deportation. *See Smith*, 27 F.3d at 655. Hence, the district court cannot be faulted for failing *sua sponte* to also address whether his deportable status would affect the severity of his sentence. *See Saro*, 24 F.3d at 286; *cf. United States v. Soto*, 132 F.3d 56 (D.C.Cir. 1997).

Accordingly, we affirm the denial of Leandre's request for downward departures from the Guidelines and the judgment of conviction.