**UNITED STATES of America,
Appellee,**

v.

**Pili C. GREENFIELD, Appellant.**

**No. 98–3133.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 23, 2000.

Decided April 6, 2001.

Neil H. Jaffee, Assistant Federal Public Defender, argued the cause for appellant. With him on the briefs was A. J. Kramer, Federal Public Defender.

Elizabeth Carroll, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were Wilma A. Lewis, U.S. Attorney, and John R. Fisher and Roy W. McLeese, III, Assistant U.S. Attorneys. Mary-Patrice Brown, Assistant U.S. Attorney, entered an appearance.

Before: EDWARDS, Chief Judge, ROGERS and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

Pili Greenfield pled guilty to the charge of conspiring to possess with intent to distribute cocaine base. Greenfield asked the district court to depart downward from the sentence required by the United States Sentencing Guidelines (U.S.S.G.), asserting that he had committed the offense while suffering from significantly reduced mental capacity. The district court declined to grant the requested departure. Finding no error in the court's application of the Guidelines, we affirm.

## I

Greenfield was arrested during a January 1998 police raid on a house in which cocaine base was being packaged for sale. A grand jury initially indicted him for possession with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii). Greenfield later pled guilty to a superseding information charging him with conspiracy to possess with intent to distribute cocaine base, in violation of 18 U.S.C. § 371.

Pursuant to Federal Rule of Criminal Procedure 32(b)(1), the United States Probation Office submitted a presentence report (PSR) to the court. The report concluded that, under the Sentencing Guidelines, the applicable sentence in Greenfield's case was 60 months' imprisonment.[1] Greenfield filed a memorandum seeking a downward departure from the guideline sentence on the ground that he suffered from significantly reduced mental capacity, pursuant to U.S.S.G. § 5K2.13. According to the memorandum, Greenfield suffered from depression, which contributed to his participation in the drug conspiracy. Def.'s Mem. in Aid of Sentencing at 7.

At the sentencing hearing, Greenfield called as his only witness Dr. Clark Hudak, a Ph.D. in clinical social work and the director of a drug treatment program. Hudak had previously treated Greenfield in 1995–96, and reexamined him in April 1998 at the request of defense counsel. A copy of Hudak's written report was also admitted into evidence.

Hudak testified that when he first saw Greenfield in 1995, he diagnosed him as suffering from depression. At the same time, Hudak learned that Greenfield was using marijuana heavily. Hudak consulted with a staff psychiatrist who confirmed the

---

1. Based on Greenfield's offense level and criminal history, the PSR determined that the applicable guideline range was 87–108 months. PSR ¶ 56. However, because 18 U.S.C. § 371 authorized a maximum sentence of only 60 months, and because that sentence was less than the minimum of the applicable guideline range, U.S.S.G. § 5G1.1(a) dictated that the court apply the 60-month sentence. *See* PSR ¶ 56.

diagnosis of depression and placed Greenfield on medication. Sentencing Hr'g Tr. at 21. After nine months to a year of therapy, Hudak found that Greenfield was responding "pretty well" and discharged him from the treatment program. *Id.* at 22.

Hudak testified that he did not see Greenfield again until April 1998, three months after his arrest. *Id.* at 25. Greenfield told Hudak that he had stopped taking his medication soon after leaving the treatment program in 1996, and that he had quickly resumed using drugs. *Id.* at 25–26. Hudak's "impression ... was that [Greenfield] was still suffering from a depression[, and] that he was also addicted to marijuana and cocaine." *Id.* at 30. Hudak testified that "when a person gets ... depressed," he can "get involved in very self–destructive behaviors," and that "knowing his history, I believe that's the direction that [Greenfield] went until he was" arrested. *Id.* at 26.

On cross-examination, Hudak testified that "in some cases, if a depression is severe enough, ... it can impair one's capacity" and "could significantly reduce someone's mental capacity." *Id.* at 31–32. Hudak conceded, however, that he had "no idea" what Greenfield's "mental condition was in January of 1998." *Id.* at 33. Hudak further testified that Greenfield's drug use was voluntary, *id.* at 31, that once he stopped taking his medication it was predictable that Greenfield "would return to drugs as a way to self medicate for his depression," *id.* at 33, and that his use of drugs was "a contributing factor to his reduced mental state." *Id.* at 34.

After the parties completed their examinations, the district court undertook its own inquiry. The court asked Hudak to explain the various degrees of depression and their associated treatments, and to relate them to defendant's condition. *Id.* at 35–38. Hudak said that when he saw Greenfield in 1995–96, he did not recommend the kind of treatment, including hospitalization, that would be indicated for severe depression. *Id.* at 37–38. After further probing by the court, Hudak described Greenfield's depression as "moderate." *Id.* at 39.

At the conclusion of the sentencing hearing, the district court denied Greenfield's request for a departure under § 5K2.13. "[T]here is simply no basis to depart," the court said. "With respect to this matter of depression[,] ... viewed ... in the most favorable light, ... the testimony actually given by [Hudak] mandates that the court not take into consideration diminished capacity." *Id.* at 52. The court imposed the 60–month guideline sentence, with accompanying recommendations that Greenfield be placed in a "boot camp," rather than a typical prison facility, and that he be permitted to enter a drug treatment program. *Id.* at 54.

## II

 This court may review a district court's refusal to depart downward from an applicable guideline range only to determine whether the sentence was imposed "in violation of law" or "as a result of an incorrect application of the sentencing guidelines." 18 U.S.C. § 3742(a)(1), (2); *see United States v. Leandre*, 132 F.3d 796, 800 (D.C.Cir.1998); *United States v. Sammoury*, 74 F.3d 1341, 1343 (D.C.Cir. 1996). We must "accept the findings of fact of the district court unless they are clearly erroneous," and "give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). If a district court refuses to depart because it "mistakenly believes [it] lacks authority to do otherwise," its sentencing decision is reviewable as an incorrect application of the Guidelines. *Sammoury*, 74 F.3d at 1344. If the court "correctly understands [its] discretionary authority to depart downward when a particular mitigating circumstance exists, [but] make[s] a clearly erroneous factual finding that the circumstance does not exist," the resulting sentence may also have been imposed as a result of an incorrect

application of the Guidelines. *Id.* at 1344; *see Leandre*, 132 F.3d at 800.

The relevant version of U.S.S.G. § 5K2.13, which is entitled "Diminished Capacity," provides:

> If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

U.S.S.G. § 5K2.13, p.s. (1997).[2] As we have previously noted, this guideline contains five eligibility criteria. A district court may depart downward under § 5K2.13 if the defendant: "(1) has committed a non-violent offense, (2) while suffering from 'significantly reduced mental capacity,' (3) that was not caused by the voluntary use of [drugs or] other intoxicants, (4) where the defendant's mental incapacity 'contributed to the commission of the offense,' (5) so long as the defendant's criminal record does not indicate a need for imprisonment to protect public safety." *Leandre*, 132 F.3d at 800.

There is no question that the district court understood that it had discretion to depart under § 5K2.13 if each of the five criteria were met.[3] Defendant contends, however, that the court "failed to consider . . . Greenfield's individualized facts and circumstances in weighing his diminished capacity departure request," and that "there is nothing in th[e] record to indicate that the district court determined whether the requirements for a § 5K2.13 departure had been met." Greenfield Br. at 9. Neither charge is true. The court heard extensive testimony regarding defendant's individual facts and circumstances, and personally examined the expert witness about Greenfield's psychological condition. Following the testimony, the court concluded, on the record, that the requirements for application of § 5K2.13 had not been met. *See* Sentencing Hr'g Tr. at 52.

Greenfield also argues that the district court misunderstood the law regarding the third and fourth criteria for departure under § 5K2.13. In support, he relies on the judge's statement that Hudak's testimony "mandates that the court not take into consideration diminished capacity." *Id.* at 52. According to defendant, the court was "apparently referring to testimony by the defense expert that Greenfield was addicted to drugs," and wrongly concluded that such an addiction required the court to deny a departure. Greenfield Br. at 5–6. Citing *United States v. Leandre*, Greenfield argues that as long as reduced mental capacity did not itself "result[ ] from voluntary use of drugs," a "departure under section 5K2.13 might remain available if a defendant's drug use contributed only in part to a crime, because his mental infirmity may have also played a role." 132 F.3d

---

2. Amendments to § 5K2.13, effective November 1998 (after Greenfield was sentenced), clarified the conditions for a departure under the guideline as well as the meaning of "significantly reduced mental capacity." *See* U.S.S.G. § 5K2.13 & comment., n. 1 (1998); U.S.S.G. app. C, amend. 583. Neither party urges application of the revised guideline or suggests that it would have any effect on the disposition of this appeal.

3. Defendant's appellate briefs do not dispute this point, and the entire focus of the sentencing hearing was on whether the criteria were met. Although, as discussed below, the district court concluded that Hudak's testimony

"*mandates* that the court not take into consideration diminished capacity," Sentencing Hr'g Tr. at 52 (emphasis added), in context it is clear that the court used the word "mandates" to indicate that § 5K2.13's criteria were not met. Indeed, the court prefaced its conclusion with an equivalent formulation: "[T]here is simply no basis to depart." *Id.* at 52. *See United States v. Shark,* 51 F.3d 1072, 1077 (D.C.Cir.1995) (holding that judge's statement, that "I don't see any basis on what I've heard so far that gives me any leeway," indicated "that the judge appreciated his discretion [to depart] but thought that he had not been presented with any reason to exercise it").

at 806. Greenfield asserts that Hudak's testimony met these requirements, and that in failing to comprehend them, the district court misapplied the guideline's third criterion (regarding voluntary drug use), as well as its fourth (regarding the contribution of defendant's mental capacity to the commission of the offense).

We need not dwell on whether Hudak's testimony satisfied the third and fourth criteria of § 5K2.13, however, because there is nothing in the district court's statement to suggest that its decision was based on those criteria—or on Hudak's testimony regarding drug use at all. The court did not specify which criteria defendant failed, and there is no reason to assume it was referring to these two. As we have stressed before with respect to refusals to depart, "the appellant ... has the initial responsibility to ensure that the district court explains its reasoning for the record, and appellant neglected that responsibility when he failed to object to the district court's ruling. Under these circumstances, we assume 'that the district court kn[ew] and applie[d] the law correctly'...." *United States v. Pinnick*, 47 F.3d 434, 439 (D.C.Cir.1995) (quoting *United States v. Garcia–Garcia*, 927 F.2d 489, 491 (9th Cir.1991)).

In any event, in this case it is clear that the sentencing court's focus was not on the testimony regarding Greenfield's drug use and its relation to the third and fourth criteria, but rather on Hudak's testimony about Greenfield's mental condition and its relation to the second criterion of § 5K2.13: the requirement that the defendant have committed the offense while suffering from "significantly reduced mental capacity." Greenfield's evidence failed to demonstrate that his mental capacity was significantly reduced, and that it was significantly reduced at the relevant time.

A diagnosis of depression, alone, does not establish that a defendant suffered from "significantly reduced mental capacity" under § 5K2.13. *See United*

*States v. Watkins*, 179 F.3d 489, 500 (6th Cir.1999) (affirming refusal to depart where, although defendant introduced evidence that he suffered from "depressive disorder," no evidence "reflected his alleged diminished capacity"); *see also United States v. Withers*, 100 F.3d 1142, 1148 (4th Cir.1996) (same); *cf. United States v. Edwards*, 98 F.3d 1364, 1371 (D.C.Cir. 1996). Nor is the guideline satisfied even by testimony that the depression manifested itself in "reduced" mental capacity. Rather, the words of the guideline require evidence that the defendant's mental capacity was "significantly" reduced. U.S.S.G. § 5K2.13; *see United States v. Webb*, 49 F.3d 636, 639 (10th Cir.1995) (reversing § 5K2.13 departure where, although defendant's psychiatric reports documented a history of mental problems, "they do not address or lead to the conclusion that defendant suffered from 'significantly reduced mental capacity' "); *see also United States v. Frazier*, 979 F.2d 1227, 1230 (7th Cir.1992) (same). Moreover, defendant's mental capacity must have been significantly reduced *at the time he committed the offense. See United States v. White*, 71 F.3d 920, 929 (D.C.Cir. 1995); *Frazier*, 979 F.2d at 1230.

The sentencing court's own examination of Hudak makes clear that its focus was on Greenfield's claim of significantly reduced mental capacity, rather than on the implications of his drug use. The court did not ask Hudak a single question about drug use. Rather, it inquired extensively into the nature and severity of Greenfield's mental disorder, and asked Hudak to explain what the treatment prescribed for defendant indicated about the level of severity. Sentencing Hr'g Tr. at 35–39. In response, Hudak categorized Greenfield's depression as "moderate," *id.* at 39, and testified that the consulting psychiatrist had prescribed an antidepressant, *id.* at 22, characterized by the PSR as "mild," PSR ¶ 41. Nothing in Hudak's response to the court's inquiries would have supported a finding of "significantly" reduced mental capacity.

Nor was there anything in Hudak's direct or cross-examination testimony that would have supported such a finding. Although Hudak testified that "in some cases, *if* a depression is severe enough, ... it can impair one's capacity" and "*could* significantly reduce someone's mental capacity," Sentencing Hr'g Tr. at 31 (emphasis added), he never testified that this was so in Greenfield's case. To the contrary, he testified that Greenfield's depression was only moderate, "on a scale of mild at the least, moderate in the middle, and then severe." *Id.* at 39. Moreover, Hudak failed altogether to offer an opinion about Greenfield's mental condition at the time of the offense, conceding that he had "no idea ... what [Greenfield's] mental condition was in January of 1998." Sentencing Hr'g Tr. at 33.

Hudak's written report was equally deficient. Although the report stated that "Greenfield suffers from a depressive disorder" and that without proper treatment his judgment "becomes impaired," App. 36, Hudak did not indicate the severity of that impairment nor tie it to an evaluation of Greenfield's mental capacity. Indeed, the contents of the report cut strongly against a finding of significantly reduced mental capacity. Hudak reported that:

> [Greenfield] seemed to be experiencing mild anxiety related to his pending legal matters. He was oriented [as] to person, place and time, and there was no evidence of any psychotic behavior past or present. His recent and remote memory were intact; his thinking was clear and organized; and he seemed to be functioning at an above average level of intelligence. There was clear evidence of tendencies toward impulsivity; however, he appeared to not be at risk for suicidal or homicidal behavior.

*Id.* at 35. Whether or not this description necessarily precludes a finding of diminished capacity, it surely does not *support* such a finding, and there is no evidence in the record that does. Moreover, like his testimony, Hudak's report does not even venture a guess as to Greenfield's mental capacity on the day he committed the crime.

In light of the clear focus of the district court's questioning of Hudak, and of the content of his testimony, we have no doubt that the court's reference to "the testimony actually given" was a reference to Hudak's testimony regarding defendant's mental capacity. For the same reason, it is clear that the court's conclusion, that Hudak's testimony "mandates that the court not take into consideration diminished capacity," expressed its view that the expert had failed to say anything that would have permitted a departure for diminished capacity under § 5K2.13. Given the complete dearth of evidence to meet § 5K2.13's second criterion, there was nothing "incorrect" about the court's conclusion, 18 U.S.C. § 3742(a)(2). *See Frazier*, 979 F.2d at 1230 (vacating departure where, although mental health evaluation diagnosed defendant as having depression, it did not "conclud[e] that the defendant 'suffered from significantly reduced mental capacity' when she committed her offense"); *see also Webb*, 49 F.3d at 639 (same); *cf. Leandre*, 132 F.3d at 803 (noting that "a bare showing of reduced mental capacity, without more, is insufficient to authorize a court to depart," and that "[a]bsent some causal link, the sentencing judge would misapply the Guidelines by granting a departure"); *United States v. Cantu*, 12 F.3d 1506, 1511 (9th Cir.1993) (noting that "a defendant bears the burden of proving the appropriateness of a downward departure").

### III

The district court neither misapprehended its authority under, nor otherwise misapplied, the Sentencing Guidelines. Accordingly, the judgment of that court is

*Affirmed.*