**UNITED STATES of America,**

v.

**Luis RAMIREZ, Defendant.**

**No. S17 98 CR 438 RLC.**

United States District Court,
S.D. New York.

July 26, 2001.

Mary Jo White, United States Attorney for the Southern District of New York, Joshua Berman, Daniel Gitner, Assistant United States Attorneys, of counsel, New York City, for the United States of America.

Lisa Scolari, of counsel, New York City, for Defendant.

## OPINION

CARTER, District Judge.

On December 7, 2000, a jury convicted Luis Ramirez ("Ramirez") of six counts of racketeering involving murder, robbery, kidnapping, possession with intent to distribute narcotics, conspiracy to rob and conspiracy to distribute narcotics, and nine substance counts involving racketeering, racketeering conspiracy, narcotics conspiracy, use of firearms in relation to crimes of violence, conspiracy to rob and robbery in violation of the Hobbs Act, kidnapping, and various violent crimes in aid of racketeering.

On March 8, 2001, the court received a letter from Ramirez's counsel seeking the appointment of a psychologist to test and evaluate defendant. The stated basis for the application was that the defendant had difficulty with memory and comprehension. The application was deemed insufficient and was denied. (Letter from court to Scolari of 4/9/01.)

On July 10, 2001, again by letter, counsel renewed the *ex parte* application for appointment of a psychologist. Counsel wrote that aside from her own observations of defendant's deficits in memory and comprehension:

[H]e has a history of impaired functioning. Mr. Ramirez was in special education classes while in school and had difficulty in all subjects. As a child, Mr. Ramirez sustained a head injury and was hospitalized in a coma. That head injury exacerbated his deficits in comprehension and recall, making it more difficult for him to learn. His inability to comprehend well hindered Mr. Ramirez's understanding of many of the legal principles applicable to his case,

such as the law of conspiracy. In addition to these deficiencies, Mr. Ramirez demonstrates a poor ability to explain what he is thinking which is hampered by his often substantial inability to recall names, dates and times.

All of this information is relevant to the Court's decision regarding Mr. Ramirez's sentencing .... [t]he guidelines provide for a downward departure for diminished capacity. § 5K2.13. We wish to make such a downward departure in this case. While I am able to communicate my observations of Mr. Ramirez and his history to the court, my opinion is no substitute for that of a trained professional, whose expertise is evaluation of mental capacity and functioning.

(Letter from Scolari to court of 7/10/01.)

■ While U.S. Sentencing Guideline ("USSG") § 5K2.13 does provide for a downward departure for diminished capacity, reliance on it in this instance is problematic. Section 5K2.13 states that "the court may not depart below the applicable guideline range if ... (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence[.]" In this case § 5K2.13 would bar downward departure since the offense involved actual violence such as murder and robbery. *See United States v. Volpe*, 78 F.Supp.2d 76, 92 (E.D.N.Y.1999); *United States v. Diaz*, 1997 WL 539980, at *5–*6 (2d Cir. Sept. 3, 1997); *but cf. United States v. Blake*, 89 F.Supp.2d 328, 338–352 (E.D.N.Y.2000). Accordingly, defendant's application must be denied since granting it would result in needless waste of time, effort and public funds.

■ Even assuming, despite the mandatory wording of § 5K2.13, that room for discretion remains, *see United States v. Blake, supra*, the stated basis for the ap-

plication does not seem consonant with the purposes § 5K2.13 is intended to serve. In the commentary to the provision, "significantly reduced mental capacity" is defined as a "significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." USSG § 5K2.13, commentary n. 1 (2000). Moreover, successful invocation of the provision requires the showing of a causal connection between the defendant's diminished mental capacity and the crimes involved. *See United States v. Prescott*, 920 F.2d 139, 146 (2d Cir.1990); *United States v. Withers*, 100 F.3d 1142, 1148 (4th Cir.1996). Counsel's letter does not appear to speak to these issues. It seems directed to defendant's lack of understanding and comprehension of the charges he was faced with at his trial.

Even that claim is of dubious validity. The fact that defendant as a child suffered a head injury and attended special education classes is cited in the defendant's pre-sentence probation report but there is nothing in the record indicating any permanent or ongoing mental impairment. (Pre-sentence Report at 31–32.) Indeed, one of defendant's high school teachers testified on his behalf at the trial. He spoke very highly of defendant's involvement in a physical fitness program while attending the school and stated that he had kept in frequent contact with defendant, but made no mention of defendant's impaired mental capacity. (Tr. 2349–2376.) Aside from his high school teacher, defendant presented five other witnesses, none of whom made reference to any personal trait, characteristic or idiosyncracy, isolated or recurrent, which evidenced mental impairment or deficiency or could be characterized as a symptom or manifestation of such deficit. (Tr. 2376–2400; 2420–2438; 2486–2492; 2493–2497; 2497–2500.) Among these witnesses was a woman who lived with defendant for nine years and had a child with him. (Tr. 2376–2400.) Surely, one would think she would testify about defendant's mental impairment, if it existed, but she did not.

Defendant's own actions are also at odds with the claim. On May 15, 2000, defendant wrote to the court seeking a change of attorney because "she cannot devote the time and attention my criminal matter (a complex and involved RICO prosecution) requires." (Letter from Luis Ramirez to court of 5/15/00.) Even more illuminating is the letter defendant wrote to his attorney advising her of the reason for his letter to the court: "as you are well aware, an attorney has an actual conflict of interest when, during the course of the representation, the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action." (Letter from Luis Ramirez to Scolari of 5/15/00.) Because they disagreed on the course of action to pursue,[1] "there is a conflict of interest in your

---

1. Ramirez explained to the court that his counsel "seems to be more concerned with pursuing a guilty plea, rather than litigating pre-trial issues, and preparing for trial. Maybe a product of her large caseload." (Letter from Luis Ramirez to court of 5/15/00.) He asserted: "I am not interested in a plea because I am innocent." (Letter from Luis Ramirez to Scolari of 5/15/00.) At a conference on June 22, 2000, Ramirez indicated that he had reached an agreement with his counsel and was satisfied with her continued representation. (Tr. 14; 17.) However, on September 6, 2000, Ramirez again wrote to the court expressing dissatisfaction with his counsel and investigator. (Letter from Luis Ramirez to court of 9/6/00.) The court called a conference on September 13, 2001 to discuss Ramirez's complaints with his counsel and investigator and received assurances that they would meet with their client more often. Ramirez did not express any further dissatis-

future representation." (*Id.*) These letters show that the defendant well understood the charges he faced at trial.

 The basis for the application also comes as a surprise. At no time during the course of the trial was there any indication from counsel that defendant was having difficulty following the proceedings or understanding what was going on. Indeed, from the court's observation, defendant seemed to be actively engaged with counsel in his defense. Counsel consulted with defendant during witness testimony regarding his involvement in various aspects of the crimes charged. At no time was a recess sought because defendant was having difficulty following the proceedings.

Even though diminished capacity is a basis for a downward departure under the sentencing guidelines, prudence would dictate that it be raised during trial or in some way brought to the court's attention. Since the court is not required to accept the determination of a defendant's expert as to the state of a defendant's mental capability, *see United States v. Leandre*, 132 F.3d 796, 807 (D.C.Cir.1998), and may rely on the court's own assessment of a defendant, *see United States v. White*, 71 F.3d 920, 929 (D.C.Cir.1995), a post-trial application, even one as flawed as this, would have more bona fides if the court had been alerted to the issue during the course of the trial.

In any event, this application does not appear to come within the parameters of § 5K2.13, but seems more relevant to a claim concerning defendant's capacity to stand trial. As such, it is defective on two grounds. It comes too late and there is no support for such a claim in the record.

faction with his counsel. The court notes that Ramirez's counsel aggressively represented

For all of the above stated reasons, the application is denied. Counsel requests that if the application is denied, counsel's letter be docketed and made a part of the record for appeal; if granted, the application remain confidential. The letter will be docketed and made a part of the record for appeal, along with the May 15, 2000 and September 6, 2000 letters of defendant to the court and counsel.

**IT IS SO ORDERED.**