# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 16, 2005     Decided December 13, 2005

No. 04-3129

UNITED STATES OF AMERICA,
APPELLEE

v.

JOSEPH B. SIMPSON,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 04cr00096-01)

---

*Lisa B. Wright*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A.J. Kramer*, Federal Public Defender. *Neil H. Jaffee* and *Mary M. Petras*, Assistant Federal Public Defenders, entered appearances.

*Elizabeth H. Danello*, Assistant U.S. Attorney, argued the cause for appellee. On the brief were *Kenneth L. Wainstein*, U.S. Attorney, *John R. Fisher*, Assistant U.S. Attorney at the time the brief was filed, and *Roy W. McLeese, III*, *Catharine A. Hartzenbusch*, and *Mary B. McCord*, Assistant U.S. Attorneys.

Before: GARLAND, *Circuit Judge*, and SILBERMAN and WILLIAMS, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

Concurring opinion filed by *Senior Circuit Judge* SILBERMAN.

GARLAND, *Circuit Judge*: Joseph B. Simpson, a citizen of Jamaica, pled guilty to re-entering the United States unlawfully after having been deported following conviction for an aggravated felony. Due to uncertainty regarding the continued validity of the United States Sentencing Guidelines in the months after the Supreme Court decided *Blakely v. Washington*, 542 U.S. 296 (2004), the district court imposed a 46-month prison term under two separate rationales. The court first sentenced Simpson by applying the Guidelines as mandatory; it then sentenced him as it would in its discretion, treating the Guidelines as advisory only. Simpson now appeals, seeking a remand to the district court for re-sentencing in light of the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005). We conclude that the alternative sentencing methodology employed by the district court was consistent with the Supreme Court's subsequent decision in *Booker* and that Simpson's sentence must therefore be affirmed.

I

On October 6, 2000, Simpson was convicted in federal court in Virginia of conspiring to possess with intent to distribute 100 kilograms or more of marijuana. As a result of that conviction, Simpson was deported from the United States on October 23, 2003. *See* 8 U.S.C. § 1227(a)(2)(A)(i)(II). Two months later, using a false name, Simpson re-entered the United States near Port Everglades, Florida. One month after re-

entering the country, Simpson was arrested in the District of Columbia for threatening to kill his wife with a kitchen knife. Fingerprints and photographs revealed Simpson's true identity, and on February 27, 2004, he was indicted on one count of re-entry by an alien deported following conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a), (b)(2).

Simpson signed an agreement to plead guilty to the indictment. The parties agreed that Simpson's base offense level under the Sentencing Guidelines was 8, and that his offense level should be enhanced to 24 "because the defendant was previously deported after a conviction for a drug trafficking offense for which the sentence imposed was greater than 13 months." Plea Agreement 2; *see* U.S.S.G. § 2L1.2(b)(1)(A). The parties further agreed that the offense level should be reduced by 3 levels to 21, due to Simpson's acceptance of responsibility. *See* U.S.S.G. § 3E1.1. The plea agreement did not include a stipulation regarding Simpson's criminal history category. The district court accepted the plea at a hearing on June 10, 2004, and it scheduled sentencing for August 25.[1]

Following entry of the plea, the U.S. Probation Office prepared a Presentence Report (PSR) that accepted the parties' calculation of Simpson's offense level. The PSR also placed Simpson in criminal history category III. That calculation was based on the PSR's finding of a total of 5 criminal history

---

[1]The plea agreement included a waiver of Simpson's right to appeal any sentence imposed by the court, unless the sentence exceeded the statutory maximum or was the consequence of an upward departure from the applicable Guidelines range. Plea Agreement 3. The government relies on this as an independent ground for affirmance. Because we conclude that the court's alternative sentence is a sufficient ground, it is unnecessary for us to consider the validity of the waiver.

points: 3 points for Simpson's marijuana conspiracy conviction and sentence, *see* U.S.S.G. § 4A1.1(a), and 2 additional points for committing the re-entry offense while still under sentence (supervised release) for the marijuana conviction, *see id.* § 4A1.1(d). At the subsequent sentencing hearing, the district court agreed with the PSR's offense level calculation, but added another criminal history point because the re-entry offense was committed less than two years after Simpson's release from imprisonment. *See id.* § 4A1.1(e).[2] The resulting 6 criminal history points did not change Simpson's criminal history category, which remained at III. *See* U.S.S.G. Ch. 5, Pt. A. The combination of offense level 21 and criminal history category III yielded a Guidelines sentencing range of 46-57 months' imprisonment. *See id.*

In the interim between Simpson's plea and sentencing, the Supreme Court decided the *Blakely* case, in which it invalidated a Washington state determinate sentencing regime similar to the U.S. Sentencing Guidelines. The Court held that a sentencing court violates the Sixth Amendment when it imposes a sentence higher than the statutory maximum sentence it "may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303. Relying on *Blakely*, Simpson's counsel challenged the calculation of her client's criminal history category as a violation of the Sixth Amendment, arguing that the category had been assigned on the basis of facts Simpson had not admitted. Def.'s Objections to PSR 2. In particular, she argued that, even if Simpson had admitted the facts necessary to assign him 3 points for the marijuana conspiracy conviction, those 3 points would only put

---

[2]The PSR stated that Simpson's marijuana conviction had resulted in a sentence of 36 months' imprisonment followed by four years of supervised release, and that Simpson had been released from prison on August 15, 2003 and subsequently deported. PSR ¶ 24.

him in category II, which would yield a lower sentencing range (41-51 months).  *See* Appellant's Br. 4.  The calculation that raised the criminal history category to III, she contended, required the court to find additional facts -- that Simpson was on supervised release at the time of his unlawful re-entry and/or that he had committed that offense less than two years after release from imprisonment.  Simpson's counsel asserted that he had not admitted those facts, and that *Blakely* therefore barred the court from using them to sentence him.[3]  Accordingly, she asked the sentencing judge to "just use your discretion." Sentencing Hr'g Tr. 8 (August 25, 2004).

At the August 25 sentencing hearing, the district court advised the parties that, in light of *Blakely*, it would give Simpson "alternative sentences":  one as if the Guidelines were "controlling," and one as if the Guidelines were "not controlling" but could be looked to "for whatever assistance . . . [the court] might be able to get from them."  *Id*. at 25.  With respect to the latter, the court invited the parties to give it "the assistance that you would like to give . . . with respect to what sentence should be imposed."  *Id*. at 26.  Simpson's counsel objected that the court should not announce an alternative sentence that would be "automatically imposed" if the Court of Appeals were to determine that the Guidelines sentence was unconstitutional, because "it doesn't give the defendant a chance to respond to whatever it is the Court says was wrong with the first sentence."  *Id*. at 27.  Counsel then went on to cite circumstances that she thought justified sentencing Simpson "at the lowest level of whatever guideline range, should the court

---

[3]Simpson's counsel also argued that *Blakely*'s exception for "'the fact of a prior conviction,'" 542 U.S. at 301 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)), did not extend to whether the instant offense took place while he was on supervised release or within two years after release from imprisonment.  *See infra* note 8.

impose a guideline range, or if the Court views the guidelines only as guidelines and not mandatory, . . . [to] a sentence less than what the guidelines would otherwise dictate." *Id*.

The district court proceeded to sentence Simpson under each of the two approaches. Turning first to the Guidelines, the court set forth the calculations outlined above, concluding that Simpson's offense level was 21, that his criminal history category was III, and that the resulting Guidelines sentencing range was 46-57 months. The court then sentenced Simpson to the bottom of that range, imposing a sentence of 46 months' imprisonment, followed by two years of supervised release. *Id*. at 46-48.

The court next addressed the appropriate sentence in the event the Guidelines were not controlling:

> I would take into account and do take into account the seriousness of this offense, that it was a conscious, intentional decision by the defendant following a conviction for an aggravated felony offense and deportation from the United States and that the Court is not confident that Mr. Simpson would not choose to return to the United States illegally in the future as well, and that the guidelines, using them only as a reference point, would suggest that an appropriate sentence for this offense should be in the range of 46 to 57 months based on a particular criminal history category.

> I find in my discretion, without the guidelines, that the appropriate sentence would be at 46 months, that that is a sentence that addresses the interests of the criminal justice system and addresses the interests and sentencing objectives of punishment and deterrence

and is the sentence that the Court imposes in its discretion, given all the facts and circumstances relevant here.

*Id*. at 49.

Simpson noted an appeal on September 2, 2004. On January 12, 2005, the Supreme Court issued its opinion in *United States v. Booker*, which held that *Blakely* applied to the U.S. Sentencing Guidelines and that the mandatory imposition of enhanced sentences under the Guidelines violated the Sixth Amendment. 125 S. Ct. at 746. In light of this holding, the Court invalidated two statutory provisions that had the effect of making the Guidelines mandatory. *Id*. We now consider Simpson's appeal in the wake of *Booker*.

II

We begin with a discussion of *Booker* and of the legal doctrines governing appellate review of sentencing error. That discussion will guide the analysis in the balance of this opinion.

A

The Supreme Court's decision in *Booker* consisted of two separate majority opinions. In the first, "substantive" opinion, the Court held that the Sixth Amendment is violated when a court imposes a sentence under the Sentencing Guidelines based on its own determination of "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict . . . ." *Booker*, 125 S. Ct. at 756. The Court emphasized, however, that its conclusion "rests on the premise . . . that the relevant sentencing rules are mandatory and impose binding requirements on all sentencing judges." *Id*. at

749-50. "If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts," the Court said, "their use would not implicate the Sixth Amendment" regardless of whether they enhanced a sentence above that consistent with a plea or verdict. *Id*. at 750.

In the second, "remedial" opinion, the Court found that the federal statutory provisions making the Guidelines mandatory were "incompatible with [*Booker*'s] constitutional holding" and had to be "severed and excised." *Id*. at 756. "So modified," the Court said, "the Federal Sentencing Act . . . makes the Guidelines effectively advisory." *Id*. at 757. The modified statute, the Court explained, "requires the sentencing court to consider Guidelines ranges, *see* 18 U.S.C.A. § 3553(a)(4) (Supp. 2004), but it permits the court to tailor the sentencing in light of other statutory concerns as well, *see* § 3553(a) (Supp. 2004)." *Id*.[4]

The *Booker* decision resolved two companion cases, one involving defendant Freddie Booker and another involving defendant Ducan Fanfan. The two dispositions identified two kinds of sentencing error. With respect to the sentence of Freddie Booker, the Court found constitutional error under the Sixth Amendment because, in obeying the mandatory Guidelines regime, the judge had increased Booker's sentence beyond the maximum that could have been imposed based

---

[4]*Booker* further stated that the statute continues to provide for appellate "review [of] sentencing decisions for unreasonableness." 125 S. Ct. 738, 767 (2005); *see id.* at 765-67. Simpson, however, has not objected to his sentence on any ground other than those considered in Part III.

solely on the facts reflected in the jury verdict. *Id.* at 769.[5] By contrast, the Court found no constitutional violation in defendant Ducan Fanfan's sentence -- which was the maximum Guidelines sentence authorized by the jury's verdict without additional findings of fact. *Id*. at 769.[6] Nonetheless, the Court vacated Fanfan's sentence and remanded to permit either party to seek resentencing "under the system set forth" in the *Booker* opinions, because the district court had committed non-constitutional error by applying the Guidelines in a mandatory rather than advisory fashion. *Id*.

The Supreme Court's conclusion that the sentencing courts in the companion cases had erred followed from the Court's ruling that it "must apply today's holdings -- both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act -- to all cases on direct review." *Id*. at 769; *see also Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) (holding that a "new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review . . ., with no exception for cases in which the new rule constitutes a 'clear break' with the past"). As a consequence, on direct review appellate courts must regard any sentencing methodology that was materially inconsistent with the *Booker*

---

[5]The jury found that Booker had possessed with intent to distribute at least 50 grams of cocaine base. *Booker*, 125 S. Ct. at 746. Although the Guidelines indicated a sentence of 210-262 months for that amount, the district court increased the sentence to 360 months based on its own finding that Booker had possessed an additional 566 grams of cocaine base and had also obstructed justice. *Id*.

[6]Fanfan's jury found him guilty of conspiracy to distribute and to possess with intent to distribute at least 500 grams of cocaine powder. Under the Guidelines, the maximum sentence authorized by the jury verdict -- without additional findings of fact -- was 78 months, which was the sentence the district court imposed. *Booker*, 125 S. Ct. at 747.

remedial opinion -- and not just the mandatory application of the Guidelines -- as *Booker* error. A district court's failure to consider the sentencing factors listed in 18 U.S.C. § 3553(a), for example, is a species of such non-constitutional (statutory) error. *See United States v. Crosby*, 397 F.3d 103, 115 (2d Cir. 2005); *infra* Part III.B.

B

When a defendant does not timely object to an error in the district court, appellate review is limited by the "plain error" standard: "[T]here must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (internal citations and quotation marks omitted); *see also* FED. R. CRIM. P. 52(b). Under the plain error standard, it "is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *United States v. Olano*, 507 U.S. 725, 734 (1993).

If a defendant does timely object to an alleged error in the district court, appellate review is instead conducted in accordance with the "harmless error" standard: If the district court erred, we must correct the error if it affects the defendant's "substantial rights." *See* FED. R. CRIM. P. 52(a). "[I]n most cases[, this] means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734. The government bears the burden of proving that prejudice did not result from the error. *See id.*

The test for harmless error comes in two models, one for non-constitutional error and one for error of constitutional dimension. *See United States v. Powell*, 334 F.3d 42, 45 (D.C. Cir. 2003). A constitutional error is harmless if it appears "beyond a reasonable doubt that the error complained of did not contribute to the [sentence] obtained." *Chapman v. California*, 386 U.S. 18, 24 (1967). By contrast, a non-constitutional error is harmless if it did not have a "substantial and injurious effect or influence in determining" the sentence. *Kotteakos v. United States*, 328 U.S. 750, 776 (1946).

### III

Simpson contends that the district court committed constitutional *Booker* error by increasing his statutory maximum based on the court's own findings of fact under a mandatory guidelines system. Further, because his trial counsel timely objected on that ground, Simpson contends that his sentence may be affirmed only if the error was harmless. Finally, insisting that the error was not harmless, Simpson argues that his sentence should be vacated and his case remanded for resentencing.

The threshold question is whether there was error at all. Although the district court spoke of imposing two "sentences," a primary and an alternative, the "judgment in a criminal case" filed by that court records only a single sentence: 46 months' imprisonment. J.A. 28-29. The judgment states that the sentence "is imposed pursuant to the Sentencing Reform Act of 1984" and that, "[a]lternatively, the *same* sentence is imposed by the Court in its discretion assuming the Sentencing Guidelines do not apply." *Id*. at 28 (emphasis added).[7]

---

[7]For this reason, we have no occasion to consider what the appropriate disposition would be if the district court had announced a

There is no question that the court's first rationale (and "sentence") was error under *Booker*, as it was calculated based on a mandatory application of the Guidelines.[8]  But "[i]n cases on appeal from the district court, we are to review 'judgments, not opinions.'"  *People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 182 F.3d 17, 23 n.7 (D.C. Cir. 1999) (quoting *Chevron U.S.A. Inc. v. Natural Resources Def. Council*, 467 U.S. 837, 842 (1984)); *see Black v. Cutter Laboratories*, 351 U.S. 292, 297 (1956).  Of course, a sentence based on an invalid rationale may be erroneous.  But here, the district court provided two *independent* rationales for the same sentence of 46 months.  If the alternative rationale is sufficient to support that judgment, the judgment must be upheld.  *See, e.g.*, *United States v. Jones*, 948 F.2d 732, 740-41 (D.C. Cir. 1991) (affirming a Guidelines departure that rested on both permissible and impermissible grounds); *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir.

---

different alternative sentence.

[8]The parties dispute whether the error in the first sentence was constitutional or non-constitutional.  The dispute is generated by the parenthetical caveat to *Booker*'s constitutional holding:  "Any fact (*other than a prior conviction*) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."  *Booker*, 125 S. Ct. at 756 (emphasis added).  Simpson contends that the district court's determination that he was still under a criminal justice sentence at the time of the instant offense, and that the instant offense was committed less than two years after his release from imprisonment, are not within the "fact of a prior conviction" exception.  If correct, this would mean that Simpson's first sentence was unlawful due to a Sixth Amendment violation and not merely due to the mandatory application of the Guidelines.  Because we conclude that the court's alternative sentence requires affirmance in any event, we need not determine the scope of the exception to resolve this appeal.

2000) (upholding a district court's evidentiary ruling on that court's alternative ground); *United States v. Lugg*, 892 F.2d 101, 105 (D.C. Cir. 1989) (denial of rehearing en banc) (finding no error in a decision due to a valid independent ground).

On first glance, it does not appear that there was a material error in the alternative rationale relied on by the district court. In *United States v. Coles*, 403 F.3d 764 (D.C. Cir. 2005), a plain error case, we said that "[a] prescient pre-*Booker* sentencing court committing *no* error would have behaved just as a sentencing court in the post-*Booker* era will operate: it would have treated the Guidelines as advisory." *Id*. at 768 (emphasis added). The district court here looks very much like that hypothetically prescient court. It considered the Guidelines as a "reference point," Sentencing Hr'g Tr. 49, and cited a number of other factors relevant under § 3553(a) as well, *see id.* In the balance of this Part, we consider three specific errors that Simpson nonetheless contends are reflected in the district court's alternative rationale.

A

Simpson's first contention is that the court's imposition of an alternative sentence violated "the long-standing judicial canon prohibiting advisory opinions." Appellant's Br. 8. At oral argument, Simpson conceded that this was not a reference to "advisory opinions" in the Article III sense, since there was -- and continues to be -- a live dispute between the parties that the federal courts must adjudicate. *Cf. Flast v. Cohen*, 392 U.S. 83, 95-97 (1968) (noting that the proscription against advisory opinions is based on Article III's limitation of the federal judicial power to "Cases" and "Controversies"). Rather, he contends that the announcement of an alternative sentence violates prudential norms.

14

We disagree. As discussed above, Simpson's alternative sentence was essentially an independent ground by which the district court reached the same judgment -- a sentence of 46 months' imprisonment -- and thereby hoped to avoid the need for resentencing if the constitutional challenge came out as the court expected it would. The provision of alternative rationales for the same judgment does not violate prudential norms; to the contrary, it is a common component of judicial opinions.[9] We find no error in the district court's decision merely to announce an alternative sentence.

B

Simpson's second contention is that *Booker*'s remedial opinion requires courts to base sentences on the factors listed in 18 U.S.C. § 3553(a), and that the district court did not do so here. Section 3553(a) enumerates a number of factors that a court "shall" consider in imposing a sentence. These include the (now advisory) range established by the Guidelines. *See* 18 U.S.C. § 3553(a)(4). But they also include such factors as "the nature and circumstances of the offense and the history and characteristics of the defendant," *id*. § 3553(a)(1); the need for the sentence to "reflect the seriousness of the offense," to

---

[9]In the 1980s, appellate courts upheld the imposition of alternative sentences in anticipation of a different challenge to the constitutionality of the Guidelines, one that was ultimately resolved in *Mistretta v. United States*, 488 U.S. 361 (1989). *See, e.g.*, *United States v. Draper*, 888 F.2d 1100 (6th Cir. 1989); *United States v. Brittman*, 872 F.2d 827 (8th Cir. 1989). And in the period between *Blakely* and *Booker*, several circuits expressly endorsed the calculation of alternative sentences in order to avoid resentencing if the Guidelines were invalidated. *See, e.g.*, *United States v. Dickerson*, 381 F.3d 251, 260 n.9 (3d Cir. 2004); *United States v. Hammoud*, 381 F.3d 316, 353-54 (4th Cir. 2004); *United States v. Booker*, 375 F.3d 508, 515 (7th Cir. 2004).

"promote respect for the law," to "provide just punishment," to "afford adequate deterrence," to "protect the public," and to "provide the defendant with needed . . . training [and] medical care," *id*. § 3553(a)(2); and the need to "avoid unwarranted sentence disparities" among similarly situated defendants, *id*. § 3553(a)(6).

Simpson is correct that *Booker* required sentencing courts to consider the § 3553(a) factors. 125 S. Ct. at 764 ("Without the 'mandatory' provision, the [Federal Sentencing] Act nonetheless requires judges to take account of the Guidelines together with [the] other sentencing goals. *See* 18 U.S.C.A. § 3553(a) (Supp.2004)."). In so doing, however, the Supreme Court did not create a wholly new obligation. As Simpson acknowledges, *see* Appellant's Br. 19, judges have been required to consider the § 3553(a) factors "in determining the particular sentence to be imposed," 18 U.S.C. § 3553(a), since the enactment of the Sentencing Reform Act of 1984. *See* 18 U.S.C. § 3582; *see also Koon v. United States*, 518 U.S. 81, 108 (1996) ("The statute requires a court to consider the listed goals . . . . in determining which sentence to choose from a given Guideline range or from outside the range, if a departure is appropriate.").

The district court made clear that it did consider those factors. In explaining its alternative sentence, the court expressly addressed the nature and circumstances of the offense and the history and characteristics of the defendant:

> [I take] into account the seriousness of this offense, that it was a conscious, intentional decision by the defendant following a conviction for an aggravated felony offense and deportation . . . and that the Court is not confident that Mr. Simpson would not choose to

> return to the United States illegally in the future as well.

Sentencing Hr'g Tr. 49. The court also took into account "the interests of the criminal justice system" and "the interests and sentencing objectives of punishment and deterrence." *Id*. All of this sounds in the terms of § 3553(a), and the court's references manifest an understanding of its statutory responsibility. *See United States v. Solis-Vaquera*, No. 04-3627, 2005 WL 2108318, at *1 (7th Cir. Sept. 2, 2005) (inferring that a sentencing court had examined the § 3553(a) factors from the fact that it referenced three of them, albeit without statutory citation).

It is true that the district court did not specifically refer to *each* factor listed in § 3553(a). But we have not required courts to do so. *See United States v. Ayers*, 428 F.3d 312, 315 (D.C. Cir. 2005) ("[W]e ordinarily presume a district court imposing an alternative non-guidelines sentence took into account all the factors listed in § 3553(a) and accorded them the appropriate significance."). Nor have other circuits. *See United States v. Robles*, 408 F.3d 1324, 1328 (11th Cir. 2005); *cf. Crosby*, 397 F.3d at 112-13 (noting that the Second Circuit's previous decisions involving "a sentencing judge's duty to 'consider' matters relevant to sentencing . . . . have refrained from imposing any rigorous requirement of specific articulation by the sentencing judge"). Section 3553(c) provides that "[t]he court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). The district court met that requirement here, and the statute does not require more in the way of explanation. *See United States v. Bridges*, 175 F.3d 1062, 1066 (D.C. Cir. 1999); *United States v. Dozier*, 162 F.3d 120, 124-25 (D.C. Cir.

1998).[10] When a defendant has not asserted the import of a particular § 3553(a) factor, nothing in the statute requires the court to explain sua sponte why it did not find that factor relevant to its discretionary decision. And nothing in *Booker* added such a requirement. *See Robles*, 408 F.3d at 1328 ("Even [post-*Booker*], we would not expect the district court in every case to conduct an accounting of every § 3553(a) factor . . . and expound upon how each factor played a role in its sentencing decision."); *see also United States v. Dean*, 414 F.3d 725, 728 (7th Cir. 2005) (rejecting the contention that "it is the duty of the sentencing judge, in every case and whether or not the defendant invokes any of the factors mentioned in section 3553(a), to make an explicit, articulated analysis of all of them a part of the sentencing process"); *United States v. George*, 403 F.3d 470, 472-73 (7th Cir. 2005) ("Judges need not rehearse on the record all of the considerations that 18 U.S.C. § 3553(a) lists; it is enough to calculate the range accurately and explain why (if the sentence lies outside it) this defendant deserves more or less.").[11]

---

[10]Something more *is* required if a district court imposes a sentence outside the Guidelines range. Section 3553(c)(2) provides that, if a sentence "is not of the kind, or is outside the range" described by the Guidelines, the court must state "the *specific* reason for the imposition of a sentence different from that described, which reasons must also be stated *with specificity* in the written order of judgment and commitment." 18 U.S.C. § 3553(c)(2) (emphasis added); *see also United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005) ("[T]he farther the judge's sentence departs from the guidelines sentence . . . , the more compelling the justification based on factors in section 3553(a) that the judge must offer in order to enable the court of appeals to assess the reasonableness of the sentence imposed.").

[11]Even if we were to regard the district court's imposition of the alternative sentence as erroneous because the court did not *expressly* recognize its obligation to consider all of the § 3553(a) factors, such an error would be statutory, not constitutional. *See supra* Part II.A.

18

C

Simpson's third contention is that, by concomitantly imposing primary and alternative sentences, the district court violated his "right to be present at his sentencing and to have an opportunity to present argument under now-applicable law." Appellant's Br. 7-8. The first half of this contention need not detain us, since Simpson *was* present at the sentencing hearing at which his (single) 46-month term was imposed. The real question is posed by the second half of the contention: Did Simpson have an opportunity at that hearing to present argument consistent with the law *Booker* later set down?

Simpson contends that he did not have such an opportunity because there were a variety of mitigating circumstances that courts were not permitted to consider -- or to consider fully -- under the mandatory Guidelines regime that preceded *Booker*. Simpson's opening brief contains a single such example. He argues that, due to his status as a deportable alien, he faces "a fortuitous increase in the severity of his sentence" -- by which he means that he is ineligible for early release to community confinement or assignment to a minimum security prison. Appellant's Br. 20. And Simpson notes that, pre-*Booker*, some courts had held that downward departures from the Guidelines sentencing range on the ground of such ineligibility were not available in unlawful re-entry cases. *See, e.g.*, *United States v. Ebolum*, 72 F.3d 35, 38-39 (6th Cir. 1995).

---

Accordingly, we would regard it as harmless if it did not have a "substantial and injurious effect" on the sentence. *Kotteakos*, 328 U.S. 750, 776 (1946); *see supra* Part II.B. The court's failure to expressly address the § 3553(a) factors did not have such an effect here, as the court made clear that it would consider any factor the defense thought relevant to mitigating the sentence.

In his reply brief, Simpson cites a second mitigating circumstance that he contends he was likewise unable to advance pre-*Booker*. He argues that, as an unlawful re-entrant arrested in the District of Columbia, he faces a stiffer sentence than similar re-entrants arrested in border jurisdictions with "fast-track" departure programs. *See United States v. Banuelos-Rodriguez*, 215 F.3d 969, 971 (9th Cir. 2000) (noting that, under the fast-track program in one California district, most unlawful re-entrants are permitted to plead to an offense that carries a two-year statutory maximum sentence). In light of § 3553(a)(6), Simpson contends, he should have been able to ask the court to reduce his sentence to avoid that disparity. *See* 18 U.S.C. § 3553(a)(6) (requiring the sentencing court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct").

The flaw in Simpson's general argument is that, although consideration of some mitigating factors was indeed barred (or limited) under the mandatory Guidelines regime, *see Koon*, 518 U.S. at 92-95, the alternative sentencing methodology employed by his sentencing court did not treat the Guidelines as mandatory. Nor did the court exclude or limit its consideration of any category of sentencing factors. To the contrary, the court extended Simpson an open-ended invitation to make mitigating arguments, regardless of whether they would have been available under the Guidelines scheme. *See* Sentencing Hr'g Tr. 25-26. And Simpson responded to that invitation by citing a series of factors in support of a sentence well below the Guidelines range. *See* Sentencing Hr'g Tr. 27-34.[12]

---

[12]Simpson's trial counsel argued that: (1) Simpson had only re-entered the United States because he feared retribution from gang members in Jamaica; (2) Simpson understood that he would again be deported and he had no intent to re-enter the United States thereafter;

Accordingly, and contrary to his contention on appeal, Simpson did have an opportunity at his sentencing hearing to present argument consistent with the law as later set forth in *Booker*.

It is true that the district court did not address the two specific mitigating circumstances Simpson cites in his appellate briefs. That was not, however, because the court barred their consideration. Rather, it was because Simpson failed to suggest them. In the closest analogy under the mandatory Guidelines regime, this Circuit initially ruled that it could not discern error at all in a court's failure to address unrequested grounds for a discretionary sentencing departure. *See United States v. Leandre*, 132 F.3d 796, 808 (D.C. Cir. 1998) (holding that "the district court cannot be faulted for failing *sua sponte* to also address whether [the defendant's] deportable status would affect the severity of his sentence"); *see also United States v. Pinnick*, 47 F.3d 434, 440 (D.C. Cir. 1995). In later cases, we settled on a plain error standard of review for such claims. *See United States v. Draffin*, 286 F.3d 606, 609 (D.C. Cir. 2002) (holding that the failure to grant a sentencing departure on an unrequested ground is reviewable only for plain error); *In re Sealed Case*, 204 F.3d 1170, 1173 (D.C. Cir. 2000) (same).

We cannot find plain error here. To establish the second element of plain error, *see supra* Part II.B, an appellant must show that, "from the perspective of the trial court, the claimed error was so plain that the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely

---

and (3) Simpson had tried to cooperate with the government after his arrest. *See* Sentencing Hr'g Tr. 27-35. His counsel contended that, in light of these considerations and the fact that he would still have to answer to a federal court in Virginia for violating his supervised release, the district court should "consider imposing a sentence of time served." *Id*. at 34.

assistance in detecting it." *Draffin*, 286 F.3d at 610 (internal quotation marks omitted). Given the multitude of factors potentially relevant in a discretionary sentencing scheme, we must be particularly cautious in finding plain error when trial counsel has failed to suggest a particular factor, lest we end up remanding whenever appellate counsel asserts a factor her predecessor did not. Indeed, under the prior sentencing regime, we held that "[o]rdinarily, [plain] error will not be found where the lawyer fails to propose a discretionary departure ground . . . ." *Draffin*, 286 F.3d at 610; *see also Leandre*, 132 F.3d at 808. Moreover, given the district court's adoption of an alternative sentencing methodology under which it was willing to consider any mitigating circumstances, Simpson cannot satisfy *his* burden of proving (under the third element of the plain error test) that, if only the court had had the benefit of reading *Booker* itself, there is a reasonable likelihood it would have considered these two specific circumstances and imposed a sentence materially more favorable to the defendant. *See Coles*, 403 F.3d at 767; *United States v. Saro*, 24 F.3d 283, 288 (D.C. Cir. 1994).

Recognizing the hurdle posed by relying on arguments that he could have asserted at sentencing, Simpson added a new twist to his "fast-track" disparity contention at oral argument. Noting that prior to *Booker* he could not have anticipated how post-*Booker* courts would treat unlawful re-entrants, Simpson complained that he was therefore disabled from pointing out disparities in the way that border and non-border courts would sentence such offenders after *Booker*. In short, Simpson insisted he could not effectively make a § 3553(a)(6) argument based on fast-track disparities until a post-*Booker* track record of such disparities developed.

This argument proves too much. Thanks to its prescience regarding the fate of the Guidelines, Simpson's sentencing court was in approximately the same position as that of the first

district courts to render sentences after *Booker*. Yet it cannot be argued that those early post-*Booker* sentences must also be vacated because their recipients did not have the opportunity to compare their sentences with sentences imposed even later. Indeed, on Simpson's theory, no sentencing could ever be the first. Each would have to await others so that there could be a basis for comparison -- which, of course, means that no sentencing could ever occur.

Simpson's argument does not fail merely because of this *reductio ad absurdum*. It also fails because it is inconsistent with *Booker* itself. There, the Supreme Court remanded for the resentencing of defendants Booker and Fanfan, without any suggestion that the district courts should wait until a track record was established by other courts. 125 S. Ct. at 769. Thus, 18 U.S.C. § 3553(a)(6), which requires sentencing courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records *who have been* found guilty of similar conduct," *id.* (emphasis added), must be read to refer to disparities with past and present sentences -- not with hypothetical future ones.

In sum, we find no cognizable error in the alternative rationale that the district court provided for its sentencing calculation, and hence no cognizable error in the 46-month sentence that the court imposed on Simpson.

IV

This opinion has proceeded on the basis that, if there is no error in a district court's alternative sentencing rationale, there is no error in the sentence the court imposed.[13] Appellate panels

---

[13]We have also determined that, if there were an error in the alternative sentencing rationale employed in this case, that error would

in the Sixth and Eighth Circuits have suggested a similar analysis.[14]   Other circuits have taken a different approach, assuming that *Booker* error in a district court's primary sentence constitutes error in the judgment, and then asking whether the court's pronouncement of a lawful alternative sentence renders that error harmless.  Utilizing that approach, the circuits have frequently found such error harmless beyond a reasonable doubt.[15]

---

be non-constitutional because the district court regarded application of the Guidelines as non-mandatory.  *See supra* note 11.

[14]*See United States v. Chandler*, 419 F.3d 484, 485 (6th Cir. 2005) ("In this case, . . . the district court not only determined the Defendant's sentence pursuant to the Guidelines, but also [in the alternative] treated the Guidelines as advisory and sentenced the Defendant pursuant to the sentencing factors outlined in 18 U.S.C. § 3553(a).  Thus, the imposition of the Defendant's sentence does not implicate the Sixth Amendment" (footnote omitted)); *United States v. Porter*, 417 F.3d 914, 917 (8th Cir. 2005) ("In some circumstances, an alternative sentence can render a *Booker* error harmless.  Or perhaps more precisely, an alternative sentence can demonstrate that the district court's imposition of sentence involved no error at all, because in one of the alternatives, the sentence was imposed consistent with *Booker*." (citations omitted)).

[15]*See, e.g.*, *United States v. Gill*, No. 04-4947, 2005 WL 2436641, at *2 (4th Cir. Oct. 4, 2005) ("[B]ecause the district court imposed an alternative discretionary sentence pursuant to § 3553(a) that was identical to the guidelines sentence, the Sixth Amendment error was harmless."); *United States v. Cardenas*, No. 04-11062, 135 Fed. Appx. 688, 690 (5th Cir. 2005) ("In this case, based on the alternative judgment, the Government has met its burden of demonstrating beyond a reasonable doubt that the Sixth Amendment violation at issue did not contribute to the sentence that Cardenas received."); *United States v. Christopher*, 415 F.3d 590, 592 (6th Cir. 2005) ("Any error in Christopher's sentencing was harmless, because the district

Were we to apply such an analysis here, we would reach the same result. Simpson's objection to the district court's mandatory application of the Guidelines in calculating his sentence was sufficient to preserve that objection for harmless error review.[16] But the existence of the alternative sentence,

court adequately conveyed that it would impose the same sentence in the absence of mandatory sentencing enhancements."); *United States v. Solis-Vaquera*, No. 04-3627, 2005 WL 2108318, at *1 (7th Cir. Aug. 31, 2005) ("[T]he error was harmless in this case because the district court selected an alternative sentence in accordance with our advice in *Booker*."); *United States v. Thompson*, 408 F.3d 994, 997 (8th Cir. 2005) ("Because the sentencing court made known that it would impose the same 420-month sentence after taking [the § 3553(a)] considerations into account, any error was harmless beyond a reasonable doubt."); *United States v. Becenti*, No. 04-2187, 134 Fed. Appx. 256, 257 (10th Cir. 2005) ("[T]he Sixth Amendment error here was harmless because the district court imposed an alternative sentence[,] . . . . and we are therefore not in the zone of speculation and conjecture regarding whether the error affected the court's selection of the sentence imposed." (internal quotation marks omitted)); *United States v. Robles*, 408 F.3d 1324, 1328 (11th Cir. 2005) (holding a constitutional *Booker* error harmless on the ground that, because the "district court stated its sentence would be the same even if the guidelines were only advisory[,] . . . . we know with certainty beyond a reasonable doubt what the district court would do upon remand"); *see also United States v. Hill*, 411 F.3d 425, 426 (3d Cir. 2005) (holding that, where "a District Court clearly indicates that an alternative sentence would be identical to the sentence imposed under the Guidelines, any error that may attach to a defendant's sentence under *Booker* is harmless").

[16]Although the parties dispute whether the first sentence's failing was constitutional or non-constitutional, *see supra* note 8, the difference is not dispositive because we would find any error harmless even on the stricter constitutional standard. *See generally supra* Part II.B.

imposed in a manner consistent with the post-*Booker* sentencing regime, removes any mystery as to what the district court would have done had *Booker* been the law at the time of Simpson's sentencing. Consequently, any error in the first sentence is harmless beyond a reasonable doubt.[17]

In opposition to this conclusion, Simpson draws our attention to a passage in a Second Circuit opinion, *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), which questions whether an alternative sentence can ever render *Booker* error harmless.[18] The first sentence of the passage, and its accompanying footnote, reads as follows:

> [E]ven if a judge, prior to *Booker/Fanfan*, indicated an alternative sentence that would have been imposed if compliance with the Guidelines were not required, that

---

[17]In *United States v. Ayers*, 428 F.3d 312 (D.C. Cir. 2005), we followed this harmless error analytic approach because it was the framework upon which the parties had agreed. 428 F.3d at 314. There, however, we found the *Booker* error in the primary sentence harmful -- despite the district court's announcement of an alternative, non-Guidelines sentence -- because the court had denied the defendant an opportunity to present "additional mitigating evidence specifically for the court's use in determining his non-guidelines sentence." *Id*. at 315. Such evidence "would have been relevant, of course, to the court's analysis under § 3553(a)," *id*., and the denial was thus contrary to the sentencing methodology prescribed in *Booker*. Here, by contrast, the district court invited Simpson to present any mitigating evidence he wished, and the court's methodology was consistent with *Booker*'s prescription.

[18]Although the passage was dicta in *Crosby*, the Second Circuit has recently adopted it in holding that a particular alternative sentence was not harmless error. *See United States v. Fuller*, 426 F.3d 556, 561 (2d Cir. 2005).

alternative sentence is not necessarily the same one that the judge would have imposed in compliance with the duty to consider all of the factors listed in section 3553(a).*/

> */ Although the duty to comply with section 3553(a) existed prior to *Booker/Fanfan*, it is unlikely that a sentencing judge anticipating that decision would have anticipated the full import of the Remedy Opinion, and considered the section 3553(a) factors, including the guidelines, with awareness of the excision of the subsection [that made the Guidelines mandatory].

*Id*. at 118 & n.18. Unlike the judge hypothesized in *Crosby*, Simpson's sentencing judge was particularly prescient. He did anticipate *Booker*'s remedial opinion and did consider the § 3553(a) factors with an awareness that he should do so on a non-mandatory basis. We are therefore confident that the alternative sentence in this case is in fact "the same one that the judge would have imposed in compliance with the duty to consider all of the factors listed in section 3553(a)." *Id*. at 118.

The second sentence of the cited passage from *Crosby* continues:

> In addition, such an alternative sentence is not necessarily the same one that the judge would have imposed after presentation by the Government of aggravating circumstances or by the defendant of mitigating circumstances that existed at the time but were not available for consideration under the mandatory Guidelines regime.

*Id*. Again, contrary to the *Crosby* hypothetical, any mitigating circumstances that existed at the time *were* available for consideration under the alternative sentencing regime employed by Simpson's sentencing judge. Accordingly, if there were any error, it was harmless beyond a reasonable doubt.

V

Although the district court pronounced sentence on Joseph Simpson prior to the Supreme Court's substantial restructuring of the federal sentencing regime in *United States v. Booker*, the court accurately predicted the course the Supreme Court would ultimately take. Because the district court's alternative sentencing methodology was materially consistent with that of *Booker*, the court's judgment is

*Affirmed*.

SILBERMAN, *Senior Circuit Judge*, concurring:

I concur fully in the court's opinion, but write separately to discuss the government's waiver argument. Although it is perfectly appropriate for the court to rest its decision on the alternative grounds we have used, normally we would consider first whether, as the government contends, Simpson waived the right to appeal his sentence on the basis he asserts. *See United States v. West*, 392 F.3d 450, 458 (D.C. Cir. 2004).

Upon reading the briefs, I concluded that Simpson knowingly and intelligently waived the right to appeal his sentence on the basis of *Booker* errors. Simpson's plea agreement included the following waiver provision:

> Limited Waiver of Appeal: Your client is aware that federal law . . . affords him the right to appeal his sentence. . . . [T]he defendant waives the right to appeal his sentence or the manner in which it was determined . . . , except to the extent that (a) the Court sentences the defendant to a period of imprisonment longer than the statutory maximum or (b) the Court departs upward from the applicable Sentencing Guideline range . . . . Realizing the uncertainty in estimating what sentence the Judge will ultimately impose, the defendant knowingly and willingly waives his right to appeal the sentence, to the extent noted above, in exchange for the concessions made by the [government] in this agreement.

By his signature, Simpson acknowledged that he had "read [the] plea agreement and carefully reviewed every part of it with [his] attorney" and that he "fully underst[ood] this plea agreement and voluntarily agree[d] to it." At Simpson's plea hearing, the court asked Simpson if he had "had the opportunity to read over the letter containing the plea agreement carefully" and if he had "had the chance to discuss [the plea agreement] with [his] counsel," to which he answered in the affirmative. The court

also asked Simpson, "do you understand that under the plea agreement in this case, you are giving up your right to appeal the sentence that I impose to the extent that is noted in the plea agreement," and Simpson replied, "Yes, sir."

Simpson asserts that the waiver was not knowing and intelligent because "it was based on misinformation as to the mandatory nature of the sentencing guidelines," but the Supreme Court has held that imperfect knowledge of future developments in the law has no bearing on the question of the validity of a waiver. For instance, in *Brady v. United States*, 397 U.S. 742 (1970), the Court observed that

> [a] defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise. A plea of guilty triggered by the expectations of a competently counseled defendant that the State will have a strong case against him is not subject to later attack because the defendant's lawyer correctly advised him with respect to the then existing law as to possible penalties but later pronouncements of the courts, as in this case, hold that the maximum penalty for the crime in question was less than was reasonably assumed at the time the plea was entered.

*Id.* at 757 (citation omitted). More than 30 years later, the Supreme Court reaffirmed *Brady* and explained that "the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the

relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *United States v. Ruiz*, 536 U.S. 622, 630 (2002). Applying these cases, nine circuit courts have definitively upheld pre-*Booker* sentence-appeal waivers against post-*Booker* claims of a right to a discretionary sentence. *See United States v. Morgan*, 406 F.3d 135, 137 (2d Cir. 2005); *United States v. Lockett*, 406 F.3d 207, 214 (3d Cir. 2005); *United States v. Johnson*, 410 F.3d 137, 152-53 (4th Cir. 2005); *United States v. Bradley*, 400 F.3d 459, 463-64 (6th Cir. 2005); *United States v. Bownes*, 405 F.3d 634, 636 (7th Cir. 2005); *United States v. Killgo*, 397 F.3d 628, 629 n.2 (8th Cir. 2005); *United States v. Cortez-Arias*, 425 F.3d 547, 548 (9th Cir. 2005); *United States v. Green*, 405 F.3d 1180, 1190 (10th Cir. 2005); *United States v. Frye*, 402 F.3d 1123, 1129 (11th Cir. 2005).[1]

This would have seemed to settle the waiver issue against Simpson, had he not brought to the court's attention *Halbert v. Michigan*, 125 S. Ct. 2582 (2005), in a Rule 28(j) letter the day before oral argument. Simpson relies on *Halbert* for the proposition that a defendant pleading guilty cannot waive a right that has not yet been recognized – in Simpson's case, "the right to obtain a discretionary sentence via appeal."

---

[1] *See also United States v. Sahlin*, 399 F.3d 27, 31 (1st Cir. 2005) (rejecting a defendant's argument that *Booker* rendered his plea involuntary and observing that "the possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompany a guilty plea"); *United States v. Bond*, 414 F.3d 542, 545 (5th Cir. 2005) (delineating the bounds of a sentence-appeal waiver where a defendant conceded that the waiver's broad language covered *Booker* errors).

4

In *Halbert*, the Court addressed the constitutionality of a Michigan constitutional amendment limiting the appellate rights of defendants who plead guilty or nolo contendere. Under the amendment, such defendants have no appeal of right to the Michigan Court of Appeals, the state's intermediate appellate court. *See* Mich. Const. art. I, § 20. Instead, defendants must petition the court for leave to appeal and, in most cases, indigent defendants are not entitled to appointed counsel to aid them during this process. *See Halbert*, 125 S. Ct. at 2588. The Court invalidated the Michigan scheme and held that it created a situation more like an appeal of right, for which *Douglas v. California*, 372 U.S. 353 (1963), requires the appointment of counsel, than a discretionary appeal, for which *Ross v. Moffitt*, 417 U.S. 600 (1974), provides that such appointment is not constitutionally required. The Court reasoned that "Michigan's intermediate appellate court looks to the merits of the claims made in the application" and that "indigent defendants pursuing first-tier review in the Court of Appeals are generally ill equipped to represent themselves." *Halbert*, 125 S. Ct. at 2590.

Relevant to our case, the majority responded to Michigan's contention that "even if Halbert had a constitutionally guaranteed right to appointed counsel for first-level appellate review, he waived that right." *Id.* at 2594. The Court's response included two independent grounds. First, the Court stated, surprisingly, that "Halbert, in common with other defendants convicted on their pleas, had *no recognized right* to appointed appellate counsel he could elect to forgo." *Id.* (emphasis added). The court also rejected Michigan's waiver argument because "the trial court did not tell Halbert, simply and directly, that in his case, there would be no access to appointed counsel." *Id.*

It is of course the first ground on which Simpson relies. He claims that the "[un]recognized right to appointed appellate counsel" at issue in *Halbert* is indistinguishable from the

"[un]recognized" jury trial right at issue in *Booker,* and suggests that *Halbert*'s sweeping anti-waiver language casts doubt not only on the circuit courts' *Booker*-waiver cases, but also on both *Brady* and *Ruiz.* Justice Thomas actually recognized this newly created tension in his dissent. After musing that "[w]hat this cryptic statement" – "no[t] recognized" – "means is unclear," *Halbert*, 125 S. Ct. at 2604 (Thomas, J., dissenting), Justice Thomas observed, presciently, that

> the majority's failure to make clear which sources of law are to be considered in deciding whether a right is "no[t] recognized," and hence nonwaivable, is bound to wreak havoc. For instance, suppose that a defendant waived the right to appeal his sentence after the regional Court of Appeals had held that the principle of *Blakely v. Washington* did not apply to the United States Sentencing Guidelines, but before this Court held the contrary in *United States v. Booker.* The defendant could claim that, in his circuit, the Sixth Amendment right against the application of the Guidelines was "no[t] recognized," and hence that the right was nonwaivable.

*Id.* at 2604 n.2 (citations omitted).

The Supreme Court majority's blithe drive-by implicit questioning of the considered views of eight circuit courts,[2] not to speak of the doubt it casts upon its own precedent, is to say the least rather discouraging to circuit judges. I suspect the Supreme Court's approach stems from its disposition to decide the issues that generate certiorari interest "come hell or high water." The shame of it is that the manner in which the Court decides cases is more important than what it decides. It is the

---

[2]Only the Ninth Circuit's *Booker*-waiver decision, *Cortez-Arias*, was issued post-*Halbert*.

former that has the greatest influence on the American judiciary. *See United States v. Moore*, 110 F.3d 99, 102 (D.C. Cir. 1997) (Silberman, J., dissenting from denial of rehearing en banc). In acting as it did in *Halbert*, the Court once again demonstrated that it sees itself primarily as a tribunal for issue determination rather than resolution of cases and controversies – which is why I have referred to it as a "noncourt court." *See Lederman v. United States*, 291 F.3d 36, 48 (D.C. Cir. 2002) (Silberman, J., concurring).

In any event, *Halbert* certainly leads us to pretermit the waiver issue and instead rely on the alternative grounds set forth in the court's opinion.